488 A.2d 11

**Geraldine WING**

v.

**Joseph D. WING, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1984.

Filed Feb. 6, 1985.

Petition for Allowance of Appeal Denied Aug. 27, 1985.

518

Stephen D. Ivey, Philadelphia, for appellant.

Joseph V. Restifo, Philadelphia, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from the Order of the Court of Common Pleas, Philadelphia County, entered February 2, 1983, requiring appellant, Joseph D. Wing, to pay appellee, Geraldine Wing, alimony in the amount of $100 per month and arrearages in the amount of $100 per month. On October 16, 1978, an Ohio court entered a decree divorcing appellee from appellant. The decree of divorce incorporated a separation agreement which, inter alia, required appellant to pay appellee $100 each month as alimony for her support and maintenance, so long as she did not remarry. At the time of this agreement, appellant had a net income of $600 per month and appellee had a gross income of approximately $9,000 per year, which after deductions, averaged $600 net income per month. The divorce decree was registered with the Court of Common Pleas of Philadelphia County on December 15, 1980, pursuant to section 506 of the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, § 506, 23 P.S. § 506. On April 8, 1981, appellee instituted an action in the lower court to enforce the Ohio alimony order. Hearings were held before the Honorable Vito F. Canuso, and after finding that the Ohio decree had been duly registered in the Philadelphia court, the lower court entered an Order on February 2, 1983 confirming and adopting the Ohio decree. A timely appeal was taken. We affirm.

Appellant presents the issues in this appeal as follows:

1. Did the trial court err in finding that the appellant, Mr. Wing, has a present net monthly income of $800, and an earning capacity of $17,000 annually?

2. Did the trial court err by failing to apply Ohio law to the facts of this case?

3. Did the trial court err in failing to modify the Ohio alimony order, err in enforcing that order, and err in

ordering Mr. Wing to pay additional monthly payments towards alimony arrearages, given the evidence that Mrs. Wing is a gainfully employed teacher with a Masters Degree at a salary of $17,200 for ten months work, while Mr. Wing is unemployed?

4. Given the substantial change in circumstances of both Mr. Wing and Mr. Wing's long-standing unemployment, did the court err in failing to modify the Ohio alimony order, err in enforcing that order, and err in ordering Mr. Wing to make additional payments toward alimony arrearages?

■ We reject appellant's first assignment of error since our review indicates that appellant nets approximately $859 per month and has the capacity to earn approximately $17,000 annually.

■ We treat appellant's other assignments of error as one, and also find them to be without merit. Ohio law applies to this case in view of 23 P.S. § 506 and the parties' court-approved stipulation that it should apply. Ohio law provides that alimony based upon a separation agreement between the parties may be modified by the court if the agreement is incorporated into the decree of divorce, the alimony award is indefinite (even though the provision is to terminate upon remarriage) and there is no property settlement (or if there is a settlement, alimony is independent thereof). *Wolfe v. Wolfe*, 46 Ohio St.2d 399, 350 N.E.2d 413 (1976); *see Schifano v. Schifano*, 324 Pa.Super. 281, 471 A.2d 839 (1984). We conclude that this rule has application here.

■ Under Ohio law, a change in circumstance in the relative economic situations of the parties does permit a court to modify an alimony award, although it is not settled whether such change in circumstance must be drastic or material or whether the magnitude of change one must show shifts in different contexts. *Compare Wolfe, supra* at 418, 350 N.E.2d at 425 ("fair [separation] agreements may be rendered manifestly oppressive ... such as ...

where the economic situation of either or both of the parties drastically changes") (dictum), *with Nash v. Nash,* 77 Ohio App. 155, 157, 65 N.E.2d 728, 730 (1945) (court award of alimony may be modified where "changes in circumstance of the parties that may be considered must be material, . . . and must be considered on the basis that the judgment sought to be modified was justified and proper when made").[1]

■ Irrespective of the exact degree of change of circumstance one must show to obtain a modification, we reject appellant's contention that the lower court ignored the increase in salary enjoyed by appellee and current unemployment experienced by appellant. The lower court had before it a complete record of all the relevant facts and circumstances upon which to base its determination and

---

[1]. Ohio Rev. Code Ann. § 3105.18, provides:

(A) In a divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony as it deems reasonable to either party.

The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.

(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earning abilities of the parties;

(2) The ages, and the physical and emotional condition of the parties;

(3) The retirement benefits of the parties;

(4) The expectancies and inheritances of the parties;

(5) The duration of the marriage;

(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

(7) The standard of living of the parties established during the marriage;

(8) The relative extent of education of the parties;

(9) The relative assets and liabilities of the parties;

(10) The property brought to the marriage by either party;

(11) The contribution of a spouse as homemaker.

(C) In an action brought solely for an order for alimony under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party.

pursuant to Ohio Rev. Code Ann. § 3105.18, it considered *all relevant factors,* which included but was not limited to the eleven factors enumerated. In addition to consideration of change in income, *Shuster v. Shuster,* 226 Pa.Super. 542, 323 A.2d 760 (1974) it is relevant to consider the change in age of children, *Commonwealth ex rel. Balph v. Balph,* 210 Pa.Super. 244, 232 A.2d 76 (1967) and inflation, *Shapera v. Levitt,* 260 Pa.Super. 447, 394 A.2d 1011 (1978); *Commonwealth ex rel. Luongo v. Tillye,* 229 Pa.Super. 453, 323 A.2d 172 (1974) as justifying a modification of an alimony or support award. These factors are not considered in isolation, as appellant would have us view his reduction in income, but as each of them affects the other.

■ Likewise, we do not agree with appellant that the lower court committed an abuse of discretion by failing to find a sufficient change in circumstance. An increase in appellee's salary does not ipso facto require the court to reduce the amount of the award, and appellant's current status as an unemployed, though unfortunate, does not diminish his capacity to earn. We distinguish the case of *Campbell v. Campbell,* 17 Ohio App.2d 87, 244 N.E.2d 525 (1968) wherein the Ohio court found an abuse of discretion committed by the lower court awarding wife alimony in an amount greatly exceeding what husband could pay. There, husband was $24,000 in debt, without assets, job or earning capacity. In our case, appellant has net income, earning capacity, a rental property, and is paying off his indebtedness under a favorable reorganization plan pursuant to Chapter 13 of the United States Bankruptcy Code. Appellant may not withdraw from gainful employment when he has support or alimony payments to maintain, when he has reasonable capacity for employment. *Appleton v. Appleton,* 191 Pa.Super. 95, 155 A.2d 394 (1959).

Since we are comparing the income of appellant at the time of the separation agreement with that of the appellee, both of whom then had income of $600 per month, we must likewise consider the change in circumstance in light of that income and the conditions existing at that time. Both

parties started on an equal basis under the agreement which set the amount of alimony at $100 per month in favor of the appellee. While we can only conjecture as to the reason for the parties' agreeing to an alimony order for the former spouse when their income was approximately equal, our assumption is that since the child was residing with the mother, despite the agreement of $200 per month for child support pursuant to the agreement, payment of alimony would give the appellant a tax benefit as would the agreement to claim the child as a dependent, while assisting the mother in maintaining the household. Thus, the allocation for tax purposes would provide the husband with a larger amount available for himself than the raw figures would indicate. *See Reisinger v. Reisinger,* 324 Pa.Super. 223, 471 A.2d 544 (1984). Also, the record indicates that appellant's income may have been greater as he was unable to "recall" what it was at trial and he readily agreed to the $600 estimate at the time of the agreement. In fact, however, the record establishes that the husband/appellant has failed to make any alimony payments since October of 1980 and thus, until the date of the present Order, January 19, 1983, he was in arrears $2,900.

The first issue is whether or not there is a substantial change in circumstance of either party which would warrant a change in the alimony order. We believe not. As to the wife, the 1978 separation agreement provides for payment of $100 per month. Five years later in 1983, despite an inflation rate which conservatively diminished the value of that amount by one-half, it remains at $100. The increase of the wife/appellee's net income is somewhat less than double the 1978 income allowing a minimal 20 per cent for deductions (that is a net of $7,200 yearly in 1978 as opposed to the net of $13,800 in 1983) so the effect, when the 1978 salary is indexed to the inflation rate, is to wipe out any real change in income and an actual decrease in the value of the 1978 Order. As to the husband/appellant, his income vacillated upward and downward between 1978 and 1983. From January of 1980 to June of 1981 he was employed at

the General Accident and Insurance Company at a rate of $19,000 per year. Between June of 1981 and December of 1981 he worked at Gino's earning $240 per week which translates into $12,480 per year. Between June of 1982 and October of 1982 the defendant worked for Farmer Reliance Insurance Company at a salary of $17,700 per year. In October of 1982 he left that employment to work for the Franklin Institute at a salary of over $22,000 per year, this job lasting approximately one month. During the time he worked for General in October of 1980, on the advice of an attorney, he stop paying alimony which he has not paid since, and upon Jeffrey's graduation from high school in June of 1982 he stopped paying support for Jeffrey, through the court, and paid on whatever basis he thought was reasonable or felt he was able to pay. It is unquestionably true that between the time the support order was agreed upon in 1978 through November of 1982, despite periods of unemployment, the defendant was employed and with the supplemental income from a duplex which he owned, he was more than able to maintain the alimony payment as well as the child support payment without hardship. It was only during the period of time that this action was in progress that his income dropped and then only for a period of three months to the date of the Order appealed from. In relation to the basis upon which the agreement was made, his income increased by 50 to 100 per cent except for the period of the last three months under consideration by the Court in these proceedings. Thus, in relation to the 50 per cent diminished value of the 1978 Order for $100 and considering his generally increased income, the defendant's failure to pay was unwarranted and could be considered a basis for contempt action. In fact, this action commenced on a petition to increase child support and to collect arrears on the alimony order, based on defendant's increased income at the time of filing in February, 1981. If this case had moved through the lower court in anything less than the two years it took to obtain an Order, there was sufficient evidence to grant the request of the petitioner/appellee.

As to the present income, though diminished, $129 per week that he receives from unemployment compensation in addition to the $510 rental of which approximately $300 is clear, results in defendant's net income being presently $859 per month.[2] Thus, in relation to the diminished value of the $100 alimony order and the diminished value of the $859 of actual income, there is still not a sufficient permanent decrease in income that would warrant diminution or vacation of the alimony order. The alimony award consisted of one-sixth of appellant's net monthly income in 1978, whereas at present it is one-eighth of his monthly income and during most of the intervening years, it dropped to less than one-twelfth of his income. Also, the record is clear that the defendant has no physical or mental ailments which would prevent him from employment, and he has shown over the years the ability to obtain rather high level and remunerative employment although a somewhat lessened capacity to retain such employment so that a period of three months unemployment cannot be a basis upon which to postulate a permanent change of circumstance. The defendant has shown no clear effort to obtain employment other than to send out written employment applications in the mail. This is not an unemployed steel worker who has limited skills and education but a person with extensive managerial and educational experience for which there is always a market. The Court thus has the right under the law to consider the defendant's earning potential, *Balph, supra;* setting that potential at $17,000 yearly is fully justified based on his employment record since 1978 to the present time. The defendant's present income calculated at $859 per month is $10,308 a year. Virtually any entry job in education, insurance, or office management would pro-

2. Defendant would have the court deduct the rent or other expenses he pays for his own home from the rent he receives from the rental property to reduce net income. This is improper as those expenses are attributable to his living expenses and are not considered when computing income.

The $129 per week unemployment compensation comes to $554 per month, when multiplied by 4.33, the average weeks per month obtained by dividing 12 into 52.

vide the $14,000 yearly income, as a substitute for the unemployment compensation he now receives, in addition to his rental income, he needs to obtain to reach the level established by the court as his reasonable earning capacity. It is necessary for a man who has obligations of child support particularly, if not alimony obligations, to be more flexible in his employment outlook and while it would appear the defendant is not interested in employment that is likely available to bring him into comformity with the court Order, the Court must look to this potential in fairly deciding whether or not the alimony order should be vacated or reduced. Appellant is also not being left to dangle as the lower court is monitoring his employment efforts by reviewing the matter on a continued hearing basis.

Other factors that must be considered are the need of the plaintiff for the alimony payment in relation to the additional expenses of a son who has gone from pre-teens to college student since the time of the separation agreement. Admittedly, the defendant is not fulfilling his obligation to pay for the support and maintenance of the child. In addition, he was required by the agreement to pay hospitalization expenses which he has failed to do. This burden is being assumed by the mother who wisely has carried hospitalization to protect herself and the child in the event of need for treatment. The wisdom of this is manifested by the fact that Jeffrey has, in the last two or three years, been diagnosed as a hydrocephalic child; in the year preceeding the support hearing he required six hospitalizations and the expense born by the mother was $1,050 over and beyond that paid for by her Blue Cross and Blue Shield. Additionally, Jeffrey is asthmatic and requires weekly allergy shots at a cost of $11 per week; the trips to the neuro-surgeon for checkups cost $25 per trip. Thus, the mother has gone far beyond what was contemplated in the support agreement in terms of her obligation to maintain the child, including paying for additional expenses relating to college and transportation and because the father has diminished his payment for the child's support within the last two

years, the mother's expenses in this respect have gone up considerably. Thus, while the increase in her gross income to $17,000 per year appears to reduce her need for the $100 monthly alimony award, when viewed in light of the additional expenses attributable to the child which should be born by the father, her need for the $100 per month alimony is all the greater. Also, during the past few years, she has incurred additional expenses for her own advanced education during summer sessions, necessary to enhance her ability to increase her income as an educator.

The purpose of the law in making support and alimony orders modifiable either upward or downward is to take into account the multiple variables of living and working conditions including the effect of change in employment, health, inflation and age of children and the parties—none of which can be foreseen and provided for at the time of the entry of the support order. In this case, the appellee would have been justified at several points throughout the intervening years to request an increase based on the husband's change of circumstances. Despite this, the appellant, even when receiving substantial income, failed to fulfill his obligations to pay the alimony and support agreement. Now he claims diminished earnings (which appear temporary). The trial court was reasonably skeptical. One of the reasons the law provides for consideration of potential earning ability, as well as actual earnings to establish the basis for a support order, is due to the well-documented reluctance of obligors to pay and their propensity to withdraw from income producing activity and to avoid gainful employment so as to defeat the effect of the court Order or to bring about a reduction or vacation of the Order. This experience shows that frequently once the Order is reduced or vacated, the obligor's employment picture brightens considerably. The trial court's skepticism is further enhanced by the fact that the record indicates that in June of 1980 the appellant went into bankruptcy and claimed as part of his obligations, $340 per month in support and alimony payments. This occurred at the same time he had withdrawn from paying alimony

totally and subsequently withdrew from court-directed payments in support for the child through the court, and began paying on his own schedule and according to his own desires. Yet, he acknowledged to the Bankruptcy Court income of $1,280 per month throughout that period of time.

The defendant does not appear to be interested in employment which, although it might temporarily bring in a lesser salary than he desires, could bring him up to the level established by the court as his earning potential at this time. It can only be assumed that his reluctance has some bearing on the fact that the mother has filed for an increase in the support for the child and for enforcement of the alimony payments. Thus, we conclude, based on the record as a whole and the mandate of the Ohio statute which has an equivalent mandate in the Pennsylvania law, that under all the relevant facts and circumstances, *only one of which is present income,* the defendant has the ability to pay the $100 a month alimony. To permit him to escape this obligation would be unwarranted not to mention discriminatory and unfair. This is all the more true since the trial court did nothing concerning the requested increase for child support, and in effect, permitted the father to continue paying to his son, on an informal basis, whatever he felt he was able.

Likewise, appellant's failure to keep current on his payments justifies the lower court's Order to pay arrearages.

We can reverse the finding of the trial court on a support order only if we find that the Order cannot be sustained on valid grounds. *Shovlin v. Shovlin,* 318 Pa.Super. 516, 465 A.2d 673 (1983).

Finding no abuse of discretion, we affirm the Order of the lower court. *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983).

Order affirmed.

BECK, J., concurs in the result.