**Reighard v. Reighard**

*Lee D. Mescolotto,* for plaintiff.
*William P. Bried,* for defendant.

DAVISON, *J.,* June 20, 1985 — We have before us for disposition the preliminary objections of plaintiff-respondent, former wife, challenging the jurisdiction[1] of this court to modify the alimony provisions in a property settlement agreement (agreement) incorporated into the parties' divorce decree.[2]

The parties were married to each other on September 12, 1970. Plaintiff filed a divorce complaint on August 24, 1983. On May 1, 1984, the parties entered into a property settlement agreement, which purported to settle and resolve "all [of their] marital,

---

1. The court of common pleas retains continuing jurisdiction of the terms and provisions of a property settlement agreement incorporated into a final decree under section 301 of the Divorce Code, 23 P.S. See Sladek v. Sladek, 26 D. & C. 3d 617 (1983).

2. When a property settlement agreement is "incorporated" into the divorce decree, the court adopts the agreement of the parties as its own determination of their respective rights. It is no longer merely a contract between the parties, but a decree of court, enforceable by the court's contempt power, and, except where exempt by statute, see 23 P.S. §501(e), modifiable. See 24 Am. Jur. 2d §840 (1983). To the extent the property settlement agreement imposes an obligation by either party for the payment of money, it is "merged" into the decree. See Rest. 178, Judgments §48; 24 Am. Jur. 2d §841 (1983). See also Tokach v. Tokach, 326 Pa. Super. 359, 474 A.2d 41 (1984); Vankirk v. Vankirk, 336 Pa. Super. 502, 485 A.2d 1194 (1984). Cf. Millstein v. Millstein, 311 Pa. Super. 495, 457 A.2d 1291 (1983) (whether merger occurs depends upon the intent of the parties).

financial, and property rights, and all other matters of whatever nature concerning their property and domestic problems and affairs between them." The agreement contained the following provision:

"10. Alimony
Husband agrees to pay Wife, for her support and maintenance and by way of *permanent alimony*, the sum of $75 per week for 85 weeks after the execution of this Agreement. Husband shall be obligated to make these payments to the Domestic Relations Section, Court of Common Pleas of Lehigh County, Pennsylvania, until the first to happen of the following:

(a) Wife's death;
(b) Husband's death." (Emphasis added.)

Both parties and their attorneys signed the agreement, which was incorporated into the divorce decree in the following order

### "DIVORCE DECREE

And now, this May 16, 1984, it is ordered and decreed that Patty Reighard, plaintiff, and Robert C. Reighard, defendant, are divorced from the bonds of matrimony and the property settlement agreement executed by the parties on May 1, 1984, and attached hereto and incorporated herein as Exhibit "A" is hereby made a part of this Decree. Court retains jurisdiction over matters of custody and visitation."

Respondent (now Patty Rau) remarried on July 12, 1984. Thereafter, on October 22, 1984, upon consideration of petitioner's petition to vacate the alimony, our colleague, The Honorable John E. Backenstoe, issued a rule upon the respondent to show cause why her former husband's obligation to

pay her alimony pursuant to section 501(e),[3] 23 P.S., of the "Divorce Code," which provides that remarriage is a bar to the receipt of alimony, should not be vacated.

Petitioner relies upon the argument that provisions for the payment of alimony contained in a property settlement agreement incorporated into a divorce decree are subject to modification. This argument is based upon the language of section 501(e) that "[a]ny order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party. . . ." To be sure, the property settlement agreement in question is fully intended to represent settlement of the respective property rights of the parties. However, it is not, nor is it contended, that this document represents an "award of alimony" by the court, which, under subsection (e) of section 501, may be modified upon changed circumstances.

It is obvious that the court, when it entered the divorce decree, did not consider the relevant factors under subsection (b) of section 501.[4] It simply ap-

---

3. Under section 501(e), 23 P.S.:

"(e) Any order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon such order may be modified, suspended, terminated, reinstituted, or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

4. Section 501 of the Divorce Code, Act of April 2, 1980, P.L. 63, 23 P.S. §101 et. seq., authorizes *the court* to award reasonable alimony *when it determines* that the party seeking alimony lacks sufficient property for his or her reasonable needs and is unable to support himself or herself through appropriate employment. Commonwealth ex rel. Cook v. Cook, 303 Pa. Super. 61, 449 A.2d 577, 581, N.6 (1982).

proved "an agreement for the payment of alimony voluntarily entered into between the parties,"[5] see 23 P.S. §501(e), which became enforceable as a court order under section 501(f), 23 P.S., Vankirk v. Vankirk,[6] 336 Pa. Super. 502, 485 A.2d 1194 (1984), when it was incorporated into the decree.

In reaching our decision, we conclude that the legislative intent in making alimony modifiable was to provide review upon changed circumstances of the many variables of living and working conditions originally considered by the court at the time the alimony award was made. See Wing v. Wing, 338 Pa. Super. 516, 488 A.2d 11 (1985). However, where parties voluntarily enter into an agreement[7] using

---

5. Prior to the enactment of the new Divorce Code, the Supreme Court of Pennsylvania summarized the laws of alimony in this state as follows: "The Pennsylvania Divorce Law does not provide for alimony following any divorce from the bonds of matrimony, except in cases of insanity." Stambaugh v. Stambaugh, 458 Pa. 147, 329 A.2d 483 (1974). Although not court-ordered, voluntary agreements to pay alimony were entered into, the enforcement of which was then the subject of civil litigation. Such litigation not infrequently resulted in financial hardship to the financially dependent spouse. See Silvestri v. Slatowski, 423 Pa. 498, 224 A.2d 212 (1966). Some view the present code as a legislative effort to remedy this result. See Gold-Bikin and Rounick, New Pennsylvania Divorce Code, 25 Vill. L. Rev. 617 (1979-80).

6. We note that in Vankirk, supra, the parties entered into a "consent order" as opposed to a property settlement agreement. In both cases, although the agreement between the parties does not represent a court determination of the matters in controversy, see Dulles v. Dulles, 369 Pa. 101, 85 A.2d 134 (1952), it has the effect of a court order.

7. The stated legislative intent of the code is to "[e]ncourage ... *settlement* of differences between spouses...." 23 P.S. §102(a)(3) (Supp. 1984-85) (Emphasis added.) We believe that any result other than that which we have reached would have the effect of defeating this stated objective.

considerations known only to themselves,[8] and merely submit their agreement to the court for approval and incorporation into a divorce decree, justice requires that it be binding upon both parties. See Kleintop v. Kleintop, 291 Pa. Super. 491, 436 A.2d 223 (1981).

Defendant's reliance on Tokach v. Tokach, 326 Pa. Super. 359, 474 A.2d 41 (1984) is misplaced. Tokach, supra, dealt with the specific issue of whether privately negotiated *child support payments* made part of a property settlement agreement incorporated into the final divorce decree were subject to modification. In discussing the effect of incorporation of a settlement agreement and its merger into the divorce decree, the court specifically stated "no such distinction has ever been held by a Pennsylvania Appellate Court to affect the power of the trial court to modify the amount of *child support*." Id. at 42. (Emphasis supplied.)

Since a parent's duty to support his child is not determined under the Divorce Code, the analogy of the relevant sections and case law which govern child support matters, 18 Pa. C.S. §§4304, 4321; 48 P.S. §131; 62 P.S. §1973. Commonwealth ex rel. Buonocore v. Buonocore, 235 Pa. Super. 66, 340 A.2d 579 (1975); Daniels v. State Farm Mutual Automobile Insurance, 283 Pa. Super. 336, 423 A.2d 1284 (1980), to section 501(e) is inapposite. We interpret Tokach as holding that, regardless of whether a *child support payment* obligation is the result of a court order or a contractual agreement in-

___

8. Plaintiff argues that this settlement agreement was structured to provide a federal tax deduction for the defendant in that the alimony payments made would afford a tax deduction to the defendant and avoid the need for a nondeductible lump-sum payment. Plaintiff's brief at 1.

corporated into a divorce decree, such child support payments are subject to modification based upon material changes in circumstances. Tokach, supra, See also Commonwealth v. Vogelsong, 311 Pa. Super. 507, 457 A.2d 1297 (1983); Dunbar v. Dunbar, 291 Pa. Super. 224, 435 A.2d 879 (1981); Repsher v. Repsher, 40 Lehigh L.J. 570 (1984).

Here, the agreement was incorporated into the decree, and the court retained jurisdiction over custody and visitation. It is patent that the parties intended the agreement to survive as a separate and independent contractual arrangement between them. Indeed, this case comports with the principles enunciated in Litwack v. Litwack,[9] 289 Pa. Super. 405, 409, 407, 408, 433 A.2d 514, 516 (1981).

"In construing a separation agreement a court must adopt that construction which gives effect to the parties' reasonable and probable intent, in view of the surrounding circumstances and purposes of the contract. Kohn v. Kohn, 242 Pa. Super. 435, 442, 364 A.2d 350, 353 (1976). See also: Wiegand v. Wiegand, 349 Pa. 517, 37 A.2d 492 (1944). In a written contract the intent of the parties is the writing itself, and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement. R. F. Felte Inc. v. White, 451 Pa. 137, 143, 302 A.2d 347, 351 (1973); East Crossroads Center Inc. v. Mellon-Stuart Co., 416 Pa. 229, 205 A.2d 865 (1965); Redevelopment Authority of the City of Johnstown v. Tross, 20 Pa. Commw. 103, 340 A.2d 652 (1975). When

9. While Litwack involved a separation agreement entered into before the Divorce Code was enacted, the application of these same principles, to the sections of the code at issue here, was approved by the Superior Court in Vankirk v. Vankirk, 336 Pa. Super. 502, 485 A.2d 1194, 1196 (1984).

the terms of a written contract are clear, this court will not rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used. Estate of Breyer, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977); R.F. Felte Inc. v. White, supra, 451 Pa. at 144, 302 A.2d at 351; East Crossroads Center Inc. v. Mellon-Stuart Co., supra; Hagarty v. William Akers, Jr. Co. Inc., 342 Pa. 236, 20 A.2d 317 (1941)."

Accordingly, we reject petitioner's efforts to extricate himself from his bargain. If the parties had intended the payment of alimony to cease upon remarriage, they could have so provided.

For these reasons, we sustain the preliminary objections and discharge the rule.

## ORDER

Now, June 20, 1985, after argument, upon consideration of the briefs of counsel, and for the reasons set forth in the accompanying opinion, it is ordered that the preliminary objections of the plaintiff, alleging lack of jurisdiction to modify the provisions of the property settlement agreement incorporated into the divorce decree between the parties entered May 1, 1984, be and the same are hereby sustained and the rule issued October 22, 1984, discharged and dismissed.