549 A.2d 225

**Michol Lea LEASURE**

v.

**James Paul LEASURE, Appellant.**

Superior Court of Pennsylvania.

Submitted July 5, 1988.

Filed Oct. 18, 1988.

614

John H. Moore, Erie, for appellant.

Marilyn Woolery, Assistant District Attorney, Erie, for appellee.

Before BROSKY, JOHNSON and WATKINS, JJ.

BROSKY, Judge:

This is an appeal from an order entered by the trial court denying appellant's petition for modification or suspension of child support payments during the period of appellant's incarceration.

The issue currently before this court is: whether the trial court erred in refusing to suspend and/or modify the order of support. We respectfully reverse the decision of the trial court and remand this case with instructions.

An appellate court will not overturn a support order entered by the trial court absent an abuse of discretion. *Commonwealth ex rel. Eppolito v. Eppolito*, 245 Pa.Super. 93, 369 A.2d 309 (1976). However, we must bear in mind that we have before us a case of first impression at the appellate level. Thus, the learned trial judge, while wrestling with this decision, had no appellate authority upon which to rely for guidance.

Appellant, through his attorney, appeared before the trial court on October 27, 1987, for a hearing on his petition to suspend the previously entered child support order. That order had directed appellant to pay $16.70 per week in child support for his minor child.

Appellant based his request for suspension of child support payments on his incarceration. He had been sentenced on August 4, 1987 to one to two years imprisonment for crimes unconnected to his support obligation.

Child support orders may be modified only when evidence produced at a hearing establishes a substantial change in circumstances. *Jaskiewicz v. Jaskiewicz*, 325 Pa.Super. 507, 473 A.2d 183 (1984). Further, the party seeking to modify a support order bears the burden of demonstrating such a change of circumstances as will justify a modification. *Commonwealth ex rel. Haertsch v. Haertsch*, 267 Pa.Super. 283, 406 A.2d 805 (1979). Thus, the burden is on appellant to prove a material change of circumstances.

The trial court, in denying appellant's request for suspension/modification, reasoned that, not only is incarceration an act not sufficiently "permanent" to allow for modification, see *Jaskiewicz*, supra., but also, that because it was appellant's voluntary act which put him behind bars, it is a situation analogous to a parent voluntarily reducing his salary to avoid paying support. See, *Wing v. Wing*, 338 Pa.Super. 516, 488 A.2d 11 (1985). We disagree.

While it is true that case law has stated that the record must show a "permanent change in ... circumstances", see,

*Brake v. Brake*, 271 Pa.Super. 314, 413 A.2d 422 (1979), *Bell v. Bell*, 228 Pa.Super. 280, 323 A.2d 267 (1974), the cases did not specifically define "permanent". Rather, the Court failed to find any material change in circumstances, thus, leaving the issue of permanence unaddressed.

Instantly, appellant was sentenced to serve 1 to 2 years in prison. While appellant may only serve 9 months with pre-release, he may also serve the entire 2 year period. The period appellant will serve remained indefinite at the time of the hearing. We choose to compare this concept of permanence to the situation in which a parent loses his job. There, the parent's "change in circumstances" is indefinite in that he may secure employment within a very short time, or he may continue to be out of work for several years. Thus, we will focus upon, not only the period of time involved, but also, the definiteness of time and irreversibility of the circumstances, in our assessment of permanence. Accordingly, we do not feel that appellant's motion should be denied because he will not be incarcerated for the remainder of his life.

As for the trial court's analogizing incarceration to a voluntary decrease in income, we cannot agree. Incarceration is usually an involuntary situation. While it may be possible to envision a parent avoiding child support by going to prison, we find it highly unlikely in the instant case, where appellant was paying $16.70 per week and where there were no allegations that appellant ever defaulted on his payments previously.

We must note here that, the rationale used by the trial court is identical to the reasoning used by the Supreme Court of Nebraska in *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985). There, the court refused to modify a support order when the father was incarcerated for "voluntary" criminal behavior. We agree with the trial court instantly that appellant was not forced to engage in criminal activity. We, however, are more persuaded by the dissent of Chief Justice Krivoska in *Ohler*, who recognized that barring an incarcerated and indigent parent from seek-

ing a modification provides no present benefit to the child. Imposing upon the incarcerated parent a continuing support obligation, beyond his ability to pay, does not help the child. Rather, it simply adds to an accumulating burden which falls upon the parent when he is least able to bear it.

This same idea has been espoused by other jurisdictions who have refused to force an incarcerated parent to pay support unless that parent possesses another asset from which funds could be generated. *Matter of Vetternack*, 334 N.W.2d 761 (Iowa 1983) (Father had equity in a house to be used to provide support for his children); *Foster v. Foster*, 471 N.Y.S.2d 867, 99 A.D.2d 284 (1984) (Support payments suspended even where father had equity in a home, since court would not force wife to sell the home to meet father's obligation); *Matter of Edmonds*, 53 Or.App. 539, 633 P.2d 4 (1981). (Parent is not liable for payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments).

With regard to appellant's assets, the following exchange took place:

MR. MORTON: Do we know what other asset he might have, Judge, that would allow him to pay support.

THE COURT: Was he a PD client?

MR. MOORE: No, he was a private client. He wasn't working at the time. His parents are friends of mine, and he didn't have any real estate. I think he had a car but I think he sold it. As far as I know he has very few assets. He was working in a business for his parents and they were paying him. He will have employment again when he gets out of jail, there's no question about that. But I don't think there's anything that would be of any use—

.     .     .     .     .

THE COURT: Does he get any money in jail?

MR. MOORE: Not as far as I know.

MRS. LEASURE: He gets paid and he told me he gets paid. I don't know how much he does.

THE COURT: Twenty cents an hour.

THE SHERIFF: Highest is about sixty-five cents.

MRS. LEASURE: Which is nothing, but neither is what he pays.

(N.T. pp. 5 and 6). Admittedly, this does not appear to be an indepth probe of appellant's assets, which this court would prefer. However, it does evidence the fact that appellant's assets were considered by the trial court and that both sides had an opportunity to address the issue. Further, we must recall that the trial court did not base its decision denying relief upon appellant's affirmative ability to pay, but rather upon the idea that appellant's "voluntary" and "temporary" situation should afford him no relief. Thus, we are satisfied that appellant is unable to pay support during his incarceration.

■ We cannot, however, ignore the minor child's needs or appellant's overall duty to support his son. Therefore, while we cannot, in good conscience, force appellant to do the impossible by paying support from his prison cell, we will order the trial court, upon appellant's release from prison and upon his securing a job, (which his attorney assured us would occur immediately upon his release), to review the support order which we are temporarily suspending. The trial court is to reassess appellant's earning capacity, bearing in mind the fact that appellant's son was forced to go without his father's financial support for an extended period of time. Should the trial court then find the current order to be insufficient, we direct the trial court to enter an appropriate support order at that time.

Order of the trial court reversed. Order of support suspended with instructions to the trial court to review the order in accordance with this opinion. Jurisdiction relinquished.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I respectfully dissent. The majority opinion finds that the trial court erred in refusing to suspend the child support

order of a father serving a term of imprisonment.[1] I conclude that this record cannot support such a finding.

The procedural beginnings of the present action are somewhat muddied. No petition for modification of the existing 1984 child support order was actually filed. Pizza Plus, which is owned by the parents of appellant James Paul Leasure and was appellant's employer, notified the Adams County Support Counseling Office that appellant would be incarcerated for approximately one year. Presumably this was done by way of explanation for the failure to attach appellant's wages pursuant to the wage attachment ordered November 19, 1985 consisting of $22.00 weekly ($16.70 support, $3.30 arrears, $2.00 court costs). On August 16, 1987, the Hearing Officer recommended support payments in the amount of $16.70 weekly to remain in effect. By letter dated August 17, 1987 but docketed September 3, 1987, appellant raised objections to the recommendations of the Hearing Officer. In my view it is this letter from appellant that should be considered as his petition for modification.[2] In his letter appellant states "I have never been unemployed until now. I am a hardworking individual and I will have employment again." Appellant also states that "[w]hen I eventually reach Mercer [State Correctional Facility], I will definitely be working. At that time I will arrange to send Jeremy my obligation. The prison will be my employer and should deduct the payments from my earnings."

On appeal appellant contends that the trial court erred in refusing to suspend and/or modify his child support order when the uncontradicted evidence established that he was

1. Appellant had been sentenced to a term of one to two years' imprisonment at the Mercer State Correctional Facility on August 4, 1987.

2. The trial court treated this letter as exceptions pursuant to Pa.R.C.P. 1910.12(e). If these objections are considered exceptions, they were untimely filed and we are without jurisdiction to hear this appeal. Pa.R.C.P. 1910.12(e) provides that matters not covered by exceptions filed within ten days after the date of the hearing officer's report are deemed waived.

incarcerated, without any income, and would continue to remain so for at least a nine-month period.

In *Fortune/Forsythe v. Fortune,* 352 Pa.Super. 547, 508 A.2d 1205 (1986), we summarized the principles governing modification of child support:

> First, that the party seeking to modify a support order bears the burden of demonstrating such a change of circumstances as will justify a modification; second, that only material and substantial changes in circumstances, as proven by competent evidence, will warrant modification of a support order; and, third, that a modification may only be based upon facts appearing in the record which show such permanent change in circumstances as to require such modification. (Citations omitted.)

352 Pa.Super. at 547, 508 A.2d at 1209.

In proceedings to modify a support order, then, it is the petitioner who has the burden of proving that there has been a material change in circumstances sufficient to warrant modification of the existing order. *Commonwealth v. Vogelsong,* 311 Pa.Super. 507, 457 A.2d 1297 (1983). It is well settled that we cannot disturb a trial court's order of support absent a clear abuse of discretion. *Shindel v. Leedom,* 350 Pa.Super. 257, 264, 504 A.2d 353, 355–56 (1986). A finding of such abuse is not lightly made and must rest upon a showing of clear and convincing evidence. *Id.* The trial court must be upheld on any valid ground. *Id.*

The trial court analogized incarceration for willful criminal behavior to voluntary withdrawal from employment, concluding that in neither case will the parent be allowed to escape his or her duty of child support. I would uphold the decision of the trial court on a different rationale. In *Matter of Vetternack,* 334 N.W.2d 761 (Iowa 1983), upon which the majority relies the Iowa Supreme Court noted that current inability to pay has become less a consideration in actions to modify child support than long-term earning capacity. This can be compared to the requirement in this Commonwealth that "modification can only be based on a

*permanent* change of circumstances." In the present case, appellant, at the same time that he asks to have his support order suspended, implicitly attests that his permanent capacity to support his child will be unaffected. Counsel also assures the court that appellant will always have a job. In addition, appellant also informed the court that while incarcerated, he will arrange to have his prison wages forwarded to meet his child support obligation.

In *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615 (1985), Chief Justice Krivosha, dissenting, stated:

> The fact that a parent is incarcerated should ... not, in and of itself, preclude a [trial] court from considering whether the facts justify a reduction in child support. Certainly, if the evidence reflects that the incarcerated parent has any assets, those assets should first be made available for the support of the child. But where, as here, it is made clear that at the present time the incarcerated parent has no assets and can do nothing about paying the child support judgment, the [trial] court should, at a minimum, be permitted to consider that fact.

*Id.,* 220 Neb. at 279, 369 N.W.2d at 619.

The majority asserts that it finds this dissent persuasive but ignores that *Ohler* involved a defendant who was incarcerated and *indigent.* The facts in the present case differ. This appellant has what appears to be guaranteed employment on release from prison in a family business as well as prison wages which he will use for child support. Notwithstanding this difference, the majority concludes that appellant is unable to pay support during his incarceration. An examination of the testimony upon which the majority relies does not support this conclusion.

> MR. MORTON: Do we know what other asset he might have, Judge, that would allow him to pay support.
> THE COURT: Was he a PD client?
> MR. MOORE: No, he was a private client. He wasn't working at the time. His parents are friends of mine, and he didn't have any real estate. I think he had a car but i think he sold it. As far as i know he has very few

assets. He was working in a business for his parents and they were again when he gets out of jail, there's no question about that. But I don't think there's anything that would be of any use—

THE COURT: Does he get any money in jail?

MR. MOORE: Not as far as I know.

MRS. LEASURE: He gets paid and he told me he gets paid. I don't know how much he does.

THE COURT: Twenty cents an hour.

THE SHERIFF: Highest is about sixty-five cents.

MRS. LEASURE: Which is nothing, but neither is what he pays.

THE COURT: I'll take a look at it. If you find anything, John, let me know.

MRS. LEASURE: It means what you are doing is?

THE COURT: The arrears will accumulate.

MRS. LEASURE: Until?

THE COURT: Until he gets out and then we will have him and see what he's doing and have money put forward to pay arrears....

(N.T. 10/27/87 at 5–6).

These testimonial speculations are not facts of record. The record fails to indicate whether the attorney, Mr. Moore, who spoke on behalf of appellant was actually representing appellant or appellant's parents, since no appearance was entered. Nevertheless, the majority appears to consider his unsworn conjecture as the equivalent of facts of record.[3]

I agree with Chief Justice Krivosha that incarceration, in and of itself, does not support a petition to modify an order of child support. In the present case, I find that the incarcerated appellant has failed to meet his burden to prove by competent evidence that modification of the child support order is warranted. Appellant having failed to

---

**3.** Arguendo, if the Adams County Sheriff has correctly stated the wage rate at Mercer State Correctional Facility as sixty-five cents ($.65) an hour, appellant will earn gross wages of $26.00 working a forty-hour week, $22.75 working a thirty-hour week.

meet his burden of proof, I would affirm the trial court on the basis that appellant has suffered no material change in his ability to provide long term support to his child.[4]

For the foregoing reasons, I dissent.

4. I would accordingly allow any arrearages to accrue, without prejudice to appellant's right to petition for remission of the accrued arrearages upon his release from prison with the proviso that appellant's prison wages are forwarded to the Adams County Court to meet his child support obligation.