JERRY OHLER, APPELLANT, V. BEVERLY OHLER, APPELLEE.
369 N.W.2d 615

Filed June 28, 1985.   No. 84-180.

Berry, Anderson, Creager & Wittstruck, for appellant.

Patricia J. Jacobs, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Caporale, J.

The applicant, Jerry Ohler, seeks to modify the decree dissolving his marriage so as to suspend his obligation to make child support payments. His application alleges a material change in circumstances in that he has been sentenced to imprisonment for a period of 15 years and is "now totally devoid of any funds, savings, stocks, bonds or any other liquidable [sic] or salable assets either real or personal; that he is unemployed, has no wages or other earnings currently available to him and has no income from any source currently available to him." The trial court determined that the application did not state a cause of action, sustained a general demurrer thereto, and dismissed the cause. We affirm.

Neb. Rev. Stat. § 42-364 (Reissue 1984) provides that when dissolving a marriage a court may include orders for the maintenance of a child "as shall be justified" and that "[s]ubsequent changes may be made by the court after hearing. . . ."

We have held that a court may modify child support becoming due in the future because of a material change in circumstances, of a nature requiring modifications in the best interests of the child or children for whose benefit the support was ordered, occurring after the entry of the dissolution decree.

*Tworek v. Tworek,* 218 Neb. 808, 359 N.W.2d 764 (1984); *Morisch v. Morisch,* 218 Neb. 412, 355 N.W.2d 784 (1984); *Harb v. Harb,* 209 Neb. 875, 312 N.W.2d 279 (1981). A "material change in circumstances" has been said to elude precise and concise definition, but, rather, involves an alteration and passage from one condition to another and requires consideration of a variety of factors or circumstances, including the obligated parent's financial means, the needs of the child or children for whom the support is to be paid, the good or bad faith motive of the obligated parent in sustaining a reduction of means, and the permanence of the change. *Morisch v. Morisch, supra.* A material change in circumstances in this context is analogous to the "good cause" required to support a modification of alimony. *Morisch v. Morisch, supra.*

In that latter connection we have recently held in *Cooper v. Cooper,* 219 Neb. 64, 361 N.W.2d 202 (1985), that the combined effects of the obligated party's lower income from a voluntary but good faith change in employment and the benefited party's newfound capacity to work warranted a reduction in the amount of alimony previously ordered.

There is no question but that incarceration constitutes an alteration and passage from one condition to another. The issue is whether the altered condition is such as to warrant a suspension, that is to say a temporary termination, of one's child support obligation.

The suggestion that we have already resolved the matter in *Sodders v. Sodders,* 210 Neb. 276, 313 N.W.2d 927 (1981), is incorrect. Although *Sodders* refused to modify an incarcerated party's obligation to pay child support, there existed a trust fund upon which the incarcerated parent could draw to meet his obligation. In contrast, the allegation in the present case is in effect that there exists no "currently available" income or assets of any kind or nature whatsoever with which to make the payments. Thus, the question of whether incarceration which results in rendering the obligated parent without financial means constitutes a material change in circumstances such as to warrant a temporary termination of child support payments during the continuation of that condition is one of first impression for this court.

We have neither been directed to, nor does our research disclose, any substantial body of law on the subject. In two cases from other jurisdictions, wherein, like *Sodders*, an asset was available to the prisoner, relief was denied. The Iowa Supreme Court in *In re Marriage of Vetternack*, 334 N.W.2d 761 (Iowa 1983), said:

> We agree with the trial court that the petitioner's equity in the house should be charged for the support payments he is unable to meet during the period of his incarceration. The crucial thing is that, during petitioner's incarceration, it will continue to be necessary to care, feed, and provide for his children. He remains responsible for those expenses. It would not be equitable for his equity in the home to remain set off to him while his children were being supported by others.

*Id.* at 763. *Noddin v. Noddin*, 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983), reasoned as follows:

> Although unemployment or diminution of earnings is a common ground for modification, a petition for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. . . .

> In the case at hand, the defendant was engaged in criminal activity at his own peril, and his reduced financial ability was due to his own fault. His child support and alimony obligations should not be reduced where his own conduct has resulted in his loss of high-earning employment and he has at least one valuable asset, while his former spouse and his child must make sacrifices. Modification of support decrees is an exercise of the court's equity powers. Equitable relief will be denied if one comes to the court with unclean hands. . . .

*Edmonds and Edmonds*, 53 Or. App. 539, 633 P.2d 4 (1981), is more directly in point. It holds that an incarcerated and obligated parent with no income should not be required to pay child support until he is capable of gainful employment. In so holding, the court of appeals quoted from *Tice v. Tice*, 207 Or. 247, 295 P.2d 866 (1956), a child support modification case not involving an incarcerated, obligated parent, the concept that

" '[n]o court is justified in ordering a man to do the impossible.' " 53 Or. App. at ____, 633 P.2d at 5. The *Edmonds* court rejected application of the clean hands maxim referred to in *Noddin*.

We, however, are not persuaded by the reasoning of the Court of Appeals for the State of Oregon. Nebraska dissolution of marriage cases are equitable in nature. *Petersen v. Petersen*, 208 Neb. 1, 301 N.W.2d 592 (1981); *Holmes v. Holmes*, 152 Neb. 556, 41 N.W.2d 919 (1950). We have held that equity, under the general maxim that one who seeks equity must come with clean hands, will refuse its aid to a litigant who violates a statute directly connected with the matter in litigation. *Christensen v. Christensen*, 144 Neb. 763, 14 N.W.2d 613 (1944) (holding that one who entered into marriage with full knowledge he suffered from a venereal disease was barred from seeking an annulment).

Incarceration of the applicant necessarily means that he was found to have violated a criminal statute. It seems to us that where one seeks relief from the obligation to pay child support on the basis that he or she is incarcerated, the violation of the statute which resulted in the incarceration is directly connected with the matter of child support. Under those circumstances equity should not and will not act to give relief.

Moreover, although *Noddin, supra*, is, as noted earlier, factually distinguishable from the present case, its suggestion that one's child support obligations should not be modified where the means with which to pay were reduced or eliminated by criminal activity strikes us as sound. Incarceration is certainly a foreseeable result of criminal activity; we find no sound reason to relieve one of a child support obligation by virtue of the fact that he or she engaged in criminal conduct. There is no reason those who have had to step in and assume the applicant's obligation should not be reimbursed by the applicant should his future position enable him to so do.

Further, we do not see how the best interests of the children for whom the support was ordered would be served by temporarily terminating the applicant's child support obligation.

This holding is in no sense inconsistent with *Cooper v.*

*Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985), for in *Cooper* no criminal activity was involved; rather, the reduced means with which to pay alimony resulted from a good faith change in occupation for sound and legitimate reasons.

The order of dismissal was correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority opinion in this case. I believe that by declaring, as a matter of law, that incarceration resulting in the reduction or elimination of income or assets does not constitute such a material change of circumstances as to warrant the temporary termination of a child support obligation, the court has created many more problems than those which it believes it has solved. Unlike the majority, I am persuaded by the reasoning of the Court of Appeals for the State of Oregon in the case of *Edmonds and Edmonds*, 53 Or. App. 539, 633 P.2d 4 (1981), and the Oregon Supreme Court in the case of *Tice v. Tice*, 207 Or. 247, 295 P.2d 866 (1956).

We obviously recognize that the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is extremely unlikely. At current interest rates the judgment will double every 6 or 7 years. How this can be in the children's best interest is difficult for me to imagine.

I am further persuaded by the reasoning of the Oregon court which concludes that a court should not be permitted to impose a judgment and itself make the payment of that judgment impossible. We would not permit such a result to exist in any other situation.

In dissenting I do not for a moment ignore the fact that the parent against whom the judgment runs has been convicted of violating a law and has brought the problem into being by reason of his own act. Nevertheless, the violation of the

criminal law was a matter which the State addressed, and for which the individual is now paying the penalty. To impose an additional penalty is not appropriate.

One need only consider the situation of two inmates in a penal institution, one of whom is divorced, the other who is not, both of whom are responsible in the law for the support of their children. The parent who is not divorced will likely not be required to provide support for his children, though apparently, under the provisions of Neb. Rev. Stat. §§ 43-512.01 et seq. (Reissue 1984), a support order could be obtained. Upon release from prison that parent, though legally responsible for the support of his or her children, will not be confronted with this large, unpaid judgment. The second inmate who, by reason of the fact he or she is divorced and a child support judgment entered, will, however, leave the penitentiary with this large judgment owing. This does not strike me as being equitable or appropriate. Certainly the pressures of paying a child support judgment, in many cases where the children have long since grown, do little, if anything, to assist in rehabilitating the prisoner.

The majority opinion notes that the dilemma which Ohler finds himself in at the moment is one of his own doing. The fact, however, that a nonsupporting parent has intentionally committed an act which prevents that parent from providing support has never been a reason for us to deny a reduction or temporary cessation in child support payments where it was clear the nonsupporting parent could not pay. A parent who is seriously injured by reason of intentionally operating a motorcycle in a race would, in all likelihood, be relieved of the obligation to pay child support even though the injury was a result of the nonsupporting parent's intentional act. In *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985), we permitted a physician to reduce the amount of his child support payments because of a reduction in income, even though the reduction in income was brought about by the intentional desire of the parent to change his occupation. We have never previously held that the fact that a parent voluntarily changes his or her occupation, thereby reducing his or her income, may not be considered by a court as a material change of circumstances.

The fact that a parent is incarcerated should likewise not, in and of itself, preclude a district court from considering whether the facts justify a reduction in child support. Certainly, if the evidence reflects that the incarcerated parent has any assets, those assets should first be made available for the support of the child. But where, as here, it is made clear that at the present time the incarcerated parent has no assets and can do nothing about paying the child support judgment, the district court should, at a minimum, be permitted to consider that fact and not be automatically barred as we have now held. I would have reversed.