No. 92-089

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CLAYTON MICHAEL MOONEY,

      Petitioner and Respondent,

v.

SHERRY LYNN BRENNAN,

      Respondent and Appellant,

  and

MICHAEL ANTHONY MOONEY,
a Minor Child.

FILED

MAR -5 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

11:00 AM.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Judy A. Williams, Billings, Montana

      For Respondent:

      George T. Radovich, Billings, Montana

      For Amicus Curiae:

            Ann Hefenieder, Department of Social and
Rehabilitation Services, Billings; K. Amy
Pfeifer, Deptment of Social and Rehabilitation
Services, Helena

Submitted: December 10, 1992

Decided: March 5, 1993

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Sherry Lynn Keele, formerly Sherry Lynn Brennan (Brennan), appeals the modification of a child support order entered in the District Court for the Thirteenth Judicial District, Yellowstone County. We reverse.

We restate the issue presented as:

Does incarceration constitute a substantial and continuing change in circumstances so as to make the terms of an existing child support order unconscionable and, as such, warrant modification?

In 1983, Brennan gave birth to a son, Michael Anthony Mooney (Michael). Michael's father was Clayton Michael Mooney (Mooney). In 1984, Mooney filed a petition seeking parental rights. After a substantial amount of legal maneuvering by both parents, a custody and support agreement was reached. Judgment on the agreement was entered in 1988. The order settled questions of paternity, custody, and support. The parents had joint custody with Mooney designated primary custodial parent.

In 1989, Brennan moved the District Court for modification of the final custody and support decree pursuant to § 40-4-219, MCA. In February 1991, the District Court denied Brennan's motion. The District Court found Brennan had not satisfied the conditions set forth in § 40-4-219, MCA. In February 1991, and again in March 1991, Mooney was arrested and subsequently pled guilty to felonious criminal acts.

After the criminal incidents occurred in March 1991, Brennan moved the District Court for temporary custody of Michael. In April 1991, the District Court granted temporary custody to Brennan and issued a show cause order on the motion. Prior to a hearing on the show cause order, the parents stipulated that they would continue to have joint custody of Michael, but Brennan would have temporary physical custody. In addition, after it became apparent he would be incarcerated in Deer Lodge as a result of pleading guilty to the criminal charges, Mooney stipulated that Brennan would be the primary custodial parent.

Having been awarded primary custody of Michael, Brennan moved for an award of child support from Mooney in May 1991. After a hearing in November 1991, the District Court awarded Brennan child support in the amount of $500 per month for April, May, June, and July 1991. The $500 amount was based on Mooney's income prior to his incarceration. The District Court then modified the amount of child support and ordered Mooney to pay support in the amount of $50 per month for August, September, October, and November 1991. Mooney began serving his prison sentence on July 31, 1991. Additionally, the District Court ordered Mooney to pay future child support payments of $50 per month beginning in December 1991. These payments were subject to modification upon Mooney's release from prison and return to employment.

The District Court reasoned that Mooney's incarceration qualified as a change of circumstances so substantial and

3

continuing as to make the terms of the support order based upon his pre-incarceration income unconscionable. It found incarceration was not a voluntary act of unemployment or under-employment. Therefore, income could not be imputed to Mooney because he was neither unemployed nor under-employed of his own volition. Brennan appeals the modification of the support order.

Does incarceration constitute a substantial and continuing change in circumstances so as to make the terms of an existing child support order unconscionable and, as such, warrant modification?

In this appeal, we decide for the first time whether the voluntary commission of a criminal offense and subsequent involuntary incarceration is grounds for a reduction or suspension of a child support obligation in Montana. Although the District Court couched its order in terms of findings, it was interpreting a statute in light of the facts presented and therefore made a conclusion of law as to the application of § 40-4-208(2)(b)(i), MCA. Our standard of review is "whether the tribunal's interpretation of the law is correct." Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

We are mindful that a number of jurisdictions which have addressed this issue have decided in favor of reducing or suspending the incarcerated parent's support obligation. Some of these courts follow an Oregon Court of Appeals decision which was overruled in 1991. Edmonds v. Edmonds (Or.App. 1981), 633 P.2d 4,

4

overruled by Willis v. Willis (Or.App. 1991), 820 P.2d 858. Under the Edmonds line of reasoning, an incarcerated parent is entitled to modification unless it can be affirmatively shown that he has assets or income with which to make the payments or the parent became imprisoned to avoid support obligations. See, e.g. Johnson v. O'Neill (Minn.App. 1990), 461 N.W.2d 507; Pierce v. Pierce (Mich.App. 1987), 412 N.W.2d 291.

Additionally, some courts reason the continuation of a child support obligation imposes an additional penalty upon one whom the state has already penalized for an offense. Pierce, 412 N.W.2d at 293. Still others reason the continuation of a support obligation while the parent is incarcerated does nothing to help the child and simply adds to an accumulated burden which falls upon the parent when released from prison. Leasure v. Leasure (Pa.Super. 1988), 549 A.2d 225, 227. We are not persuaded by these holdings.

The continuation of the child support obligation while incarcerated does not constitute double punishment. It is simply a continuation of that which the incarcerated parent is bound under the law to do. Furthermore, although the parent will have a debt burden to assume upon release, repayment of the arrearage may be scheduled by the District Court according to post-incarceration income.

This Court has held that "a substantial change in the financial condition of the parent . . . has been recognized as grounds for modification of a previously-entered child support

5

order," and we will continue to adhere to this holding in appropriate cases. In re the Marriage of Rome (1980), 190 Mont. 495, 497, 621 P.2d 1090, 1092. However, we believe a rule absolving a parent of a child support obligation while incarcerated due to a voluntary criminal act is "in conflict with other well-established principles of domestic relations law . . . ." Willis, 820 P.2d at 859. As we have often held, the support of children is a matter of social concern. Fitzgerald v. Fitzgerald (1980), 190 Mont. 66, 70, 618 P.2d 867, 869. "It is an obligation that the father owes the state as well as his children." Fitzgerald, 618 P.2d at 869.

Section 40-4-208, MCA, allows a decree of child support to be modified under certain circumstances. Subsection (2)(b)(i), which is applicable to the facts presented here, reads:

(b) Whenever the decree proposed for modification contains provisions relating to . . . support, modification . . . may only be made:

(i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable;

There is no question that incarceration constitutes a substantial change in circumstances. Nor do we question the continuity of the change of circumstances through the duration of the incarceration. However, the issue is whether the change of circumstances caused by incarceration rises to the level of unconscionability so as to warrant a suspension or reduction of a parent's moral, as well as

6

legal, obligation to support his own. In re the Marriage of Hickey (1984), 213 Mont. 38, 45, 689 P.2d 1222, 1226.

In the past, we have declined to adopt, or rely upon, a solitary definition for the term "unconscionable" as used in § 40-4-208, MCA. Green v. Green (1978), 176 Mont. 532, 539, 579 P.2d 1235, 1238-39. Rather, our interpretation of the term hinges upon a case-by-case analysis after scrutinizing the underlying facts. In re the Marriage of McNeff (1983), 207 Mont. 297, 300, 673 P.2d 473, 475. As we have said, "we know when we are shocked." Green, 579 P.2d at 1239. In light of the facts presented here, we conclude it is not unconscionable to deny a temporary termination or reduction in child support obligations due to incarceration, notwithstanding the fact that the jailed parent earns no income while incarcerated and does not have assets which could be utilized to pay the support.

We agree with, and adopt the reasoning of, the Oregon Court of Appeals in Willis. In Willis, the Court of Appeals reasoned:

> Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences.
>
> A person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense. We recognize that an individual in father's situation--assuming that he is genuinely indigent and unable to pay--cannot be found in contempt for not paying

7

support while incarcerated. However, this is not a contempt proceeding; it is simply a modification proceeding. Father should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run. Accordingly, we hold the father's support obligation continues to accrue during his incarceration.

Willis, 820 P.2d at 860.

Additionally, Noddin v. Noddin (N.H. 1983), 455 A.2d 1051, and Proctor v. Proctor (Utah App. 1989), 773 P.2d 1389, are persuasive. Although these cases held modification of child support payments were unwarranted where the incarcerated parent had assets, the reasoning of both courts extends to the instant case. In Noddin, the New Hampshire Supreme Court reasoned that while unemployment and diminution of earnings were commonly grounds for modification of a child support decree, a change in financial condition brought about by the voluntary waste of one's talents and assets is not reason for modification of a decree. Noddin, 455 A.2d 1053 (citing 2A W. Nelson, Divorce and Annulment §17.16, at 87-88 (1961 rev. ed.)). The Utah Court of Appeals in Proctor reasoned similarly. "[A]n able bodied person who stops working . . . as a result of punishment for an intentional act, nonetheless retains . . . the duty to support his or her children." Proctor, 733 P.2d at 1391.

The above reasoning, and that promulgated in Willis, is sound and in line with the public policy of this state. The provisions of Title 40, Chapter 4 are to be liberally construed to promote the underlying purposes of the chapter. Section 40-4-101, MCA. One

8

purpose is to require parents to provide support for their children.

> This chapter shall be liberally construed and applied to promote its underlying purposes, which are to:
>
> (4) make reasonable provision for . . . minor children during and after litigation;

Section 40-4-101(4), MCA. Under the facts of this case, we hold the District Court was incorrect as a matter of law in ruling incarceration meets the requirements of § 40-4-208(2)(b)(i), MCA, and justifies a modification of child support payments because of resultant loss of income.

The decision of the District Court is reversed and remanded for further proceedings consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

9

Justice Terry N. Trieweiler, dissenting.

I dissent from the opinion of the majority.

Although the majority's opinion is long on platitudes, it is short on practical benefit to the dependant child; it jeopardizes the father's chances for successful reentry into law abiding society; and it ignores the vast majority of well-reasoned decisions on this subject.

Child support in Montana is governed by three principal statutes. Section 40-4-204(2)(e), MCA, lists as one of the principal factors to be considered in assessing a parent's child support obligation the financial resources and needs of the noncustodial parent. Section 40-5-209, MCA, requires the Department of Social and Rehabilitation Services to adopt uniform child support guidelines, and § 40-4-204(3), MCA, requires that those guidelines be applied in the court's calculation of a noncustodial parent's child support obligation. The guidelines are found in §§ 46.30.1501, et seq., ARM, and provide for child support based almost exclusively on a parent's financial ability to pay.

It is clear, therefore, that throughout our statutory and administrative scheme for arriving at a parent's obligation to pay child support, the parent's financial ability to make those payments is the primary concern.

It stands to reason that under § 40-4-208(2)(b)(i), MCA, which provides for a modification of a child support obligation where circumstances have changed to the extent that the prior obligation is unconscionable, the primary consideration has to be a change in

10

the parent's financial ability to continue making the support payments. If "unconscionable" means anything, it has to at least include the circumstances where a parent is unable to make continued payments because he or she has no income nor any other assets with which to make the payments.

Much of the majority opinion does not withstand scrutiny. For example, the opinion states that imposing an impossible burden on the father in this case is not double punishment because it is simply a continuation of his previous obligation under the law. However, that is not correct. His previous obligation under the law was to make support obligations which were based on his ability to pay. Under the majority decision, he incurs a debt for an obligation that he has no ability to pay.

The majority goes on to say that even though the parent may have a debt upon his release from prison, the District Court can figure out some schedule for payment of the debt. However, if we presume that upon his release from prison Mr. Mooney goes back to work, and if we further presume that his support obligation at that time reflects the maximum amount he is able to pay based on his income, where is he supposed to get the additional amounts with which to repay the debt that accumulated during his incarceration?

The majority dismisses the practical difficulties of the father's predicament by concluding that he has a moral and legal obligation to support his own child. How is that moral obligation satisfied by entering judgment against the father which he is completely unable to satisfy and which will place additional

11

financial pressure on a person who has already demonstrated that he has a difficult time following the law?

The majority cites with approval language from another jurisdiction to the effect that unless the child support obligation is continued during incarceration, the parent could potentially profit from his illegal conduct. How can the father in this case, who was earning $30,000 before his imprisonment, profit by giving up that income in exchange for being relieved of a $500 a month child support obligation? The accounting system by which these profits have been calculated is a novel one.

The problem with the majority's analysis of this case is the manner in which it frames the issue. It is not necessary that we decide that incarceration always relieves a parent of his or her child support obligation, or that in the alternative, the parent is never relieved of that obligation. The vast majority of jurisdictions have decided that a parent who is imprisoned, and as a result loses his or her income, is relieved of the obligation to make child support payments unless the parent has other assets with which to make those payments. I agree with the decision of the Illinois Court of Appeals in *People ex rel. Meyer v. Nein* (Ill. App. 4 Dist. 1991), 568 N.E.2d 436, wherein that court stated:

> Having considered all of the authorities from other
> States, we agree with the Pennsylvania court which
> compared incarceration to an involuntary loss of
> employment (*Leasure v. Leasure* (1988), 378 Pa.Super. 613,
> 616, 549 A.2d 225, 227; *accord Peters v. Peters* (Ohio Ct. App.
> 1990), 1990 Wl 127193); we also agree, however, that
> incarceration, as a foreseeable result of criminal
> activity, does not *ipso facto* relieve one of the obligation
> to pay child support. (*Division of Child Support Enforcement ex rel.*

12

*Harper v. Barrows* (Del. 1990), 570 A.2d 1180, 1183 (and cases cited therein)). Decisions on modification, when questions of this type appear, are best left to the discretion of the trial court. This view is consistent with the decisions of the courts of other States, apart from the decision in *Ohler [v. Ohler* (1985), 220 Neb. 272, 369 N.W.2d 615]; and the exercise of that discretion has generally been guided by principles summarized in *Barrows*:

> We have found no jurisdiction which currently suspends or discharges child support obligations if an affirmative showing has been made that an incarcerated support obligor has available assets.

*Meyer*, 568 N.E.2d at 437.

Other cases in accord with the *Meyer* decision are *Pierce v. Pierce* (Mich. App. 1987), 412 N.W.2d 291; *Clemans v. Collins* (Alaska 1984), 679 P.2d 1041; *Nab v. Nab* (Idaho App. 1988), 757 P.2d 1231; *Johnson v. O'Neill* (Minn. App. 1990), 461 N.W.2d 507.

Even the New Hampshire and Utah decisions relied on by the majority found it significant in those cases that the parents against whom child support obligations were to be enforced had assets with which to satisfy the obligation. In this case, there was no evidence that Clayton Mooney had any assets with which to satisfy the support obligation which will continue to accrue during his imprisonment.

One of the original and leading decisions which denied suspension of child support payments during a period of incarceration was *Ohler v. Ohler* (Neb. 1985), 369 N.W.2d 615. However, the dissent to that opinion by Chief Justice Krivosha is more frequently cited and followed by other courts. In his dissent, Chief Justice Krivosha stated:

13

We obviously recognize that the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is extremely unlikely. At current interest rates, the judgment will double every six or seven years. How this can be in the children's best interest is difficult for me to imagine.

I am further persuaded by the reasoning of the Oregon court which concludes that a court should not be permitted to impose a judgment and itself make the payment of that judgment impossible. We would not permit such a result to exist in any other situation.

In dissenting, I do not for a moment ignore the fact that the parent against whom the judgment runs has been convicted of violating a law and has brought the problem into being by reason of his own act. Nevertheless, the violation of the criminal law was a matter which the State addressed, and for which the individual is now paying the penalty. To impose an additional penalty is not appropriate.

*Ohler*, 369 N.W.2d at 618-19 (Krivosha dissenting).

This case does not present a situation where the father has tried to avoid his obligation to his child. This father and mother were not married, and in spite of that fact, it was the father who initiated a paternity action to establish his parental rights. He was the primary custodian and sole financial supporter of his child from shortly after birth until several months after the offenses which resulted in his imprisonment. He neither requested nor received child support payments from the child's mother.

Prior to his imprisonment, the father was employed in a family business in which he is a part owner. He did not leave his

14

employment and give up his income by choice. There is no evidence that he chose imprisonment and unemployment as an alternative to a $500 monthly child support obligation.

The Child Support Enforcement Division of the Montana Department of Social and Rehabilitation Services has filed an amicus curiae brief in this case. In its brief, the Division opposes suspension of child support payments during a period of imprisonment, regardless of the imprisoned parent's ability to make those payments. The Division makes the argument that it is the child's best interest with which the court should be concerned, rather than the imprisoned parent. However, nowhere in the Division's brief, nor in the majority opinion, is there any explanation for how this child's interest is going to be served by imposing on the parent who has always voluntarily supported him, an obligation to make support payments during a period of time when he has no income and no assets with which to make those payments. Nowhere in the Division's brief, nor in the majority's opinion, is there any explanation for how the child is best served by imposing a debt on this parent which in all probability can never be satisfied.

The District Court did not suspend the father's obligation to make child support payments as a reward because of his criminal conduct. The obligation was suspended during the father's period of imprisonment because, as a practical matter, the obligation could not be paid and, as a principle of statutory law, his future obligation after his release from prison will have to be based on

15

his ability to pay. To tack an accumulated debt on to what the father is able to pay is to impose an impossible obligation.

The majority subscribes to the view that to suspend an obligation that cannot be paid rewards an incarcerated parent and that to enforce an obligation that cannot be paid somehow benefits the dependent child. I cannot grasp the logic of the majority's analysis. Therefore, I dissent from the majority opinion.

_____
Justice

Justices Karla M. Gray and William E. Hunt, Sr., join in the foregoing dissent of Justice Terry N. Trieweiler.

_____
Justice

_____
Justice

March 5, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Judy A. Williams
Attorney at Law
2442 First Ave. No.
Billings, MT 59101

George T. Radovich
Attorney at Law
926 Main, Ste. #9
Billings, MT 59105

K. Amy Pheifer
Dept. of Social & Rehabilitation Services
P.O. Box 5955
Helena, MT 59604

Ann Hefenieder
Dept. of Soc. & Rehab. Services
1127 Alderson Ave., Ste. 100
Billings, MT 59102

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy