JUSTICE TRIEWEILER
dissenting.
I dissent from the opinion of the majority.
Although the majority’s opinion is long on platitudes, it is short on practical benefit to the dependant child; it jeopardizes the father’s chances for successful reentry into law abiding society; and it ignores the vast majority of well-reasoned decisions on this subject.
*203 Child support in Montana is governed by three principal statutes. Section 40-4-204(2)(e), MCA, lists as one of the principal factors to be considered in assessing a parent’s child support obligation the financial resources and needs of the noncustodial parent. Section 40-5-209, MCA, requires the Department of Social and Rehabilitation Services to adopt uniform child support guidelines, and § 40-4-204(3), MCA, requires that those guidelines be applied in the court’s calculation of a noncustodial parent’s child support obligation. The guidelines are found in § 46.30.1501, et seq., ARM, and provide for child support based almost exclusively on a parent’s financial ability to pay.
It is clear, therefore, that throughout our statutory and administrative scheme for arriving at a parent’s obligation to pay child support, the parent’s financial ability to make those payments is the primary concern.
It stands to reason that under § 40-4-208(2)(b)(i), MCA, which provides for a modification of a child support obligation where circumstances have changed to the extent that the prior obligation is unconscionable, the primary consideration has to be a change in the parent’s financial ability to continue making the support payments. If “unconscionable” means anything, it has to at least include the circumstances where a parent is unable to make continued payments because he or she has no income nor any other assets with which to make the payments.
Much of the majority opinion does not withstand scrutiny. For example, the opinion states that imposing an impossible burden on the father in this case is not double punishment because it is simply a continuation of his previous obligation under the law. However, that is not correct. His previous obligation under the law was to make support obligations which were based on his ability to pay. Under the majority decision, he incurs a debt for an obligation that he has no ability to pay.
The majority goes on to say that even though the parent may have a debt upon his release from prison, the District Court can figure out some schedule for payment of the debt. However, if we presume that upon his release from prison Mr. Mooney goes back to work, and if we further presume that his support obligation at that time reflects the maximum amount he is able to pay based on his income, where is he supposed to get the additional amounts with which to repay the debt that accumulated during his incarceration?
The majority dismisses the practical difficulties of the father’s predicament by concluding that he has a moral and legal obligation *204 to support his own child. How is that moral obligation satisfied by entering judgment against the father which he is completely unable to satisfy and which will place additional financial pressure on a person who has already demonstrated that he has a difficult time following the law?
The majority cites with approval language from another jurisdiction to the effect that unless the child support obligation is continued during incarceration, the parent could potentially profit from his illegal conduct. How can the father in this case, who was earning $30,000 before his imprisonment, profit by giving up that income in exchange for being relieved of a $500 a month child support obligation? The accounting system by which these profits have been calculated is a novel one.
The problem with the majority’s analysis of this case is the manner in which it frames the issue. It is not necessary that we decide that incarceration always relieves a parent of his or her child support obligation, or that in the alternative, the parent is never relieved of that obligation. The vast majority of jurisdictions have decided that a parent who is imprisoned, and as a result loses his or her income, is relieved of the obligation to make child support payments unless the parent has other assets with which to make those payments. I agree with the decision of the Illinois Court of Appeals in People ex rel. Meyer v. Nein (Ill. App. 4 Dist. 1991), 568 N.E.2d 436, wherein that court stated:
Having considered all of the authorities from other States, we agree with the Pennsylvania court which compared incarceration to an involuntary loss of employment (Leasure v. Leasure (1988), 378 Pa.Super. 613, 616, 549 A.2d 225, 227; accord Peters v. Peters (Ohio Ct. App. 1990), 1990 WL 127193) [590 N.E. 2d 777]; we also agree, however, that incarceration, as a foreseeable result of criminal activity, does not ipso facto relieve one of the obligation to pay child support. (Division of Child Support Enforcement ex rel. Harper v. Barrows (Del. 1990), 570 A.2d 1180, 1183 (and cases cited therein)). Decisions on modification, when questions of this type appear, are best left to the discretion of the trial court. This view is consistent with the decisions of the courts of other States, apart from the decision in Ohler v. Ohler (1985), 220 Neb. 272, 369 N.W.2d 615]; and the exercise of that discretion has generally been guided by principles summarized in Barrows:
*205 We have found no jurisdiction which currently suspends or discharges child support obligations if an affirmative showing has been made that an incarcerated support obligor has available assets.
Meyer, 568 N.E.2d at 437.
Other cases in accord with the Meyer decision are Pierce v. Pierce (Mich. App. 1987), 412 N.W.2d 291; Clemans v. Collins (Alaska 1984), 679 P.2d 1041; Nab v. Nab (Idaho App. 1988), 757P.2d 1231; Johnson v. O’Neill (Minn. App. 1990), 461 N.W.2d 507.
Even the New Hampshire and Utah decisions relied on by the majority found it significant in those cases that the parents against whom child support obligations were to be enforced had assets with which to satisfy the obligation. In this case, there was no evidence that Clayton Mooney had any assets with which to satisfy the support obligation which will continue to accrue during his imprisonment.
One of the original and leading decisions which denied suspension of child support payments during a period of incarceration was Ohler v. Ohler (Neb. 1985), 369 N.W.2d 615. However, the dissent to that opinion by Chief Justice Krivosha is more frequently cited and followed by other courts. In his dissent, Chief Justice Krivosha stated:
We obviously recognize that the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is extremely unlikely. At current interest rates, the judgment will double every six or seven years. How this can be in the children’s best interest is difficult for me to imagine.
I am further persuaded by the reasoning of the Oregon court which concludes that a court should not be permitted to impose a judgment and itself make the payment of that judgment impossible. We would not permit such a result to exist in any other situation.
In dissenting, I do not for a moment ignore the fact that the parent against whom the judgment runs has been convicted of violating a law and has brought the problem into being by reason of his own act. Nevertheless, the violation of the criminal law was *206 a matter which the State addressed, and for which the individual is now paying the penalty. To impose an additional penalty is not appropriate.
Ohler, 369 N.W.2d at 618-19 (Krivosha dissenting).
This case does not present a situation where the father has tried to avoid his obligation to his child. This father and mother were not married, and in spite of that fact, it was the father who initiated a paternity action to establish his parental rights. He was the primary custodian and sole financial supporter of his child from shortly after birth until several months after the offenses which resulted in his imprisonment. He neither requested nor received child support payments from the child’s mother.
Prior to his imprisonment, the father was employed in a family business in which he is a part owner. He did not leave his employment and give up his income by choice. There is no evidence that he chose imprisonment and unemployment as an alternative to a $500 monthly child support obligation.
The Child Support Enforcement Division of the Montana Department of Social and Rehabilitation Services has filed an amicus curiae brief in this case. In its brief, the Division opposes suspension of child support payments during a period of imprisonment, regardless of the imprisoned parent’s ability to make those payments. The Division makes the argument that it is the child’s best interest with which the court should be concerned, rather than the imprisoned parent. However, nowhere in the Division’s brief, nor in the majority opinion, is there any explanation for how this child’s interest is going to be served by imposing on the parent who has always voluntarily supported him, an obligation to make support payments during a period of time when he has no income and no assets with which to make those payments. Nowhere in the Division’s brief, nor in the majority’s opinion, is there any explanation for how the child is best served by imposing a debt on this parent which in all probability can never be satisfied.
The District Court did not suspend the father’s obligation to make child support payments as a reward because of his criminal conduct. The obligation was suspended during the father’s period of imprisonment because, as a practical matter, the obligation could not be paid and, as a principle of statutory law, his future obligation after his release from prison will have to be based on his ability to pay. To tack an accumulated debt on to what the father is able to pay is to impose an impossible obligation.
*207 The majority subscribes to the view that to suspend an obligation that cannot be paid rewards an incarcerated parent and that to enforce an obligation that cannot be paid somehow benefits the dependent child. I cannot grasp the logic of the majority’s analysis. Therefore, I dissent from the majority opinion.
JUSTICES GRAY and HUNT join in the foregoing dissent of JUSTICE TRIEWEILER.