[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has moved for a downward modification of child support. He is presently incarcerated, claims he has no means to pay support, and based on Commissioner of Human Resources v.Bridgeforth, 42 Conn. Sup. 126, 129, 604 A.2d 836 (1992) andGueits v. Correa, 8 S.M.D. 77 (1994) he seeks a reduction of the support order to zero for the duration of his incarceration. The plaintiff mother and the State oppose the motion.
Based on the file record and the testimony at the hearing, the court finds the following underlying facts: The plaintiff and the defendant intermarried on September 19, 1987 in the Town of Griswold. The marriage was stormy. In November, 1988, the plaintiff filed this action for a dissolution of the marriage and for a restraining order. The only issue of the marriage, Christopher Jude Laubenheimer, was born on April 5, 1989. The judgment dissolving the marriage was entered at Norwich on July 27, 1989, Cramer, S.T.R. The plaintiff was on public assistance and the Attorney General appeared on behalf of the State. The defendant did not appear at the hearing. He was ordered to pay $100.00 per week for support of the child, and the Attorney General provided him notice of the order[1].
In March, 1990, the defendant moved to modify the support order, alleging that he was then incarcerated with income of $5.25 per week. The motion was granted by the court, Burns, J.,
the support order was reduced to $5.00 per week, and the motion was marked over to September 24, 1990 on "support matters only". Although the file contains no record of orders on that date or thereafter on the modification, both parties agree that the order was further modified to $31.00 per week support plus $10.00 per CT Page 4031-A week on the arrearage. Contempt proceedings in May, 1991 confirm that periodic order and both sides as well as the support enforcement division believe that to be the present order. See Transcript, 1/16/96 (hereinafter "T"), 5, and court file. At the time, the defendant was out of prison on probation. In September, 1994, he was convicted of violation of probation and he was remanded to the Department of Corrections to complete his sentence. The defendant filed his pro se motion to modify on April 17, 1995. It was served in hand upon the plaintiff on May 2.
The underlying facts and the substantive issues in the present case are similar to those in Gueits v. Correa, supra. In that case the incarcerated defendant's motion for relief was opposed by the petitioner Union County, New Jersey, which, joined by the Attorney General, argued: "Defendant is incarcerated through his own actions and the taxpayers should not be punished by further reducing the child support order. If he is unable to pay while incarcerated, the order should continue, arrears should accrue and at some point he will be released and made to pay off the arrears. Certainly it is possible that he could win the lottery or come into some money." Gueits v. Correa, supra, 78. The court, however, granted the motion and modified the order to zero. The substantive question is: "If a child support obligor subject to a monetary order is thereafter convicted of a crime and incarcerated, thereby removing his means to pay support, is he entitled to a reduction of the order based on his ability to pay, or is the criminal act volitional, thereby precluding him from modification?"
In addition to Gueits v. Correa the issue has been addressed in several cases in this division as well as by Superior Court judges. In Collier v. Jennings, 1 S.M.D. 92, 3 CSCR 204 (1987), the undersigned denied a similar motion to modify. Although that case is distinguishable because it sought a retroactive reduction of the arrearage, the court ruled that "[t]he respondent would not be entitled to a downward modification of his child support order, even were the motion timely filed." Id., 96. The court relied primarily on a Nebraska Supreme Court case, Ohler v.Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985), holding that "imprisonment as a result of criminal activity is just as voluntary, just as inexcusable, and as natural and predictable a consequence as is loss of income by quitting a job or loss of license as a result of driving while intoxicated." Collier v.Jennings, supra. CT Page 4031-B
However, a similar decision from the bench by the undersigned in 1991 was appealed to the family division of the Superior Court pursuant to General Statutes § 46b-231(n). The court reversed the undersigned's decision and held that "any obligation for support or for arrearage is suspended nunc pro tunc from the date of incarceration to the date of the respondent's release. . . ."Yrayta v. Bridgeforth, sub nom. Commissioner of Human Resourcesv. Bridgeforth, 42 Conn. Sup. 126, 129, 604 A.2d 836 (1992). The court, Burns, J., followed a similar ruling in Foster v. Foster,99 App.Div.2d 284, 471 N.Y.S.2d 867 (1984), cited with approvalClemans v. Collins, 679 P.2d 1041 (Alaska 1984) and Pierce v.Pierce, 162 Mich. App. 367, 412 N.W.2d 291 (1987), and held "where a noncustodial parent is imprisoned for a crime other than nonsupport . . . we believe that the better rule should be that the parent is not liable for such payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments." Bridgeforth, supra, 128; Matter ofMarriage of Edmonds, 53 Or. App. 539, 633 P.2d 4, 5 (1981).
In Parker v. Parker, Superior Court, Judicial District of New London at Norwich, doc. no. 70489 (Hutchinson, F.S.M., Sept. 27, 1991), the court denied an obligor's motion to modify based on diminution of income due to incarceration after a criminal conviction, citing Collier v. Jennings, supra, Ohler v. Ohler,220 Neb. 272, 369 N.W.2d 615 (1985), and Koch v. Williams,456 N.W.2d 299 (N.D. 1990). The decision was rendered after the trial court decision in Bridgeforth, but before the appeal was decided.Parker was also appealed to the Superior Court. General Statutes § 46b-231(n). The court, Mihalakos, J., reversed the judgment of the Family Support Magistrate Division and, citing the Bridgeforth appeal, supra, which by then had been determined, ordered that "any obligation of alimony and support or for arrearages is suspended nunc pro tunc from December 19, 1990 to the date of the defendant's release."[2]
In a motion invoking the original jurisdiction of the Superior Court, Judge Axelrod held that the obligor's ". . . decrease in income has been brought about by his own fault. His actions in defrauding the government has [sic] resulted in his arrest and conviction. Such conduct on his part is not excusable and is not the basis for a substantial change in circumstances so as to allow a modification of the child support order." O'Connellv. O'Connell, Superior Court, Judicial District of New Haven at New Haven, doc. no. FA81-0192265 (Axelrod, J., May 14, 1992). Judge Axelrod also held, for the same reason, that application of CT Page 4031-C the child support guidelines would be inequitable and inappropriate, and denied modification on that ground as well. He included reference to a number of the frequently cited cases on the issue from around the country, and particularly relied onKoch v. Williams, supra, and the concurring opinion therein[3].
In a dissolution of marriage judgment, Judge Gordon recently set a support order of $117.50 per week based on the obligor's earning capacity[4], adding: "During the time that the defendant is incarcerated, child support payments shall accrue as an arrearage. Current child support payments shall commence upon defendant's release from incarceration, and in addition, at that time, he shall also pay $25.00 per week on the arrearage. . . ."Deal v. Deal, Superior Court, Judicial District of Middlesex at Middletown, doc. no. 73317 (Gordon, J., Jan. 2, 1996).
Nationally, courts around the country remain evenly split on the issue. Gueits v. Correa, supra, 79-80, 82-86, summarized case law in sister states. A discussion of such decisions may also be found in the Missouri case Oberg v. Oberg, 869 S.W.2d 235
(Mo.App.W.Dist. 1993). A comprehensive annotation entitled "Loss of Income Due to Incarceration as Affecting Child Support Obligation" may be found at 27 A.L.R.5th 540-592. Rather than repeating these discussions, reference may be had to these sources.
In summary, previously reported cases which appear to allow relief for incarcerated obligors include: Clemans v. Collins,679 P.2d 1041 (Alaska 1984); Nab v. Nab, 114 Ida. 512, 757 P.2d 1231
(1988); People ex rel. Meyer v. Nein, 209 Ill. App.3d 1087,154 Ill.Dec. 436, 568 N.E.2d 431 (1991); Pierce v. Pierce,162 Mich. App. 367, 412 N.W.2d 291 (1987); Kuronen v. Kuronen,499 N.W.2d 51 (Minn.App. 1993); Johnson v. O'Neill, 461 N.W.2d 507
(Minn.App. 1990); Foster v. Foster, 99 App.Div.2d 284,471 N.Y.S.2d 867 ( 1984); Peters v. Peters, 69 Ohio App.3d 275, 277,590 N.E.2d 777 (1990); Matter of Marriage of Willis, 314 Or. 566,840 P.2d 697 (1992); Matter of Marriage of Edmonds, 53 Or. App. 539,633 P.2d 4, 5 (1981); Leasure v. Leasure, 378 Pa. Super. 613,549 A.2d 225 (1988); Matter of Marriage of Blickenstaff,71 Wash. App. 489, 859 P.2d 646 (1993).
In more recent cases, a Minnesota decision has confirmed that state's position that incarceration is involuntary and therefore precludes a continued support obligation. The defendant was on probation after a first incarceration after conviction of CT Page 4031-D "terroristic threats". He was then convicted of violating probation by reason of committing an assault upon the plaintiff. The court held that the second incarceration was involuntary, and that it was improper to impute either the defendant's pre-incarceration income or even his room and board while incarcerated, to compute a support order. Franzen v. Borders,521 N.W.2d 626 (Minn.App. 1994).
Maryland has also weighed in on the side of excusing support of incarcerated obligors. The trial court construed the obligor's motion for stay of enforcement to be a motion to modify and ordered a cessation of the support order. In affirming, the Court of Special Appeals held that although the obligor "should not reap the benefit of his own wrongdoing", he did not commit the crime for the purpose of avoiding support, and has no present way to pay support. Wills v. Jones, 104 Md. App. 539, 650 A.2d 736
(1994).
In the District of Columbia, a father convicted of assault with intent to kill after shooting his wife, was sentenced to incarceration for eight to twenty-seven years. He was relieved of child support for his children because the court found that the father's intention in the shooting was to kill his wife, not to evade child support. The court awarded the wife ownership of the family home, but found adding a cumulating child support debt to the father's prison sentence to be problematical. Lewis v. Lewis,637 A.2d 70 (D.C.Ct.App. 1994).
Previously reported cases which generally deny relief to the incarcerated obligor or require some continued child support payments include: In re Marriage of Hamilton, 857 P.2d 542
(Colo.App. 1993); Division of Child Support Enforcement v.Barrows, 570 A.2d 1180 (Del. 1990); Ross v. Ross, 581 N.E.2d 982
(Ind.App. 1991); Davis v. Vance, 574 N.E.2d 330 (Ind.App. 1991);In re Vettemack, 334 N.W.2d 761 (Iowa 1983); In re Phillips,493 N.W.2d 872 (Iowa App. 1992); Redmon v. Redmon, 823 S.W.2d 463
(Ky.App. 1992); State v. Nelson, 587 So.2d 176 (La.App. 1991);Alexander v. Alexander, 417 So.2d 92 (La.App. 1982); Oberg v.Oberg, 869 S.W.2d 235 (Mo.App.W.Dist. 1993); Mooney v. Brennan,257 Mont. 197, 848 P.2d 1020 1023 (1993); Ohler v. Ohler,220 Neb. 272, 369 N.W.2d 615 (1985); Noddin v. Noddin, 123 N.H. 73,455 A.2d 1051 (1983); Koch v. Williams, 456 N.W.2d 299 (N.D. 1990); Cole v. Cole,[5] 70 Ohio App.3d 188, 590 N.E.2d 862
(1990); Procter v. Procter, 773 P.2d 1389 (Utah App. 1989);Parker v. Parker, 152 Wis.2d 1, 447 N.W.2d 64 (1989); Glenn v.CT Page 4031-EGlenn, 848 P.2d 819 (Wyo. 1993).
The most recent case in point resulted in an affirmation of a trial court denial of a motion to modify because of incarceration. The court found that incarceration alone was not a sufficient reason to reduce child support, noting that it is a "strong public policy . . . to make support of minor children paramount." Thomasson v. Johnson, 102 N.M. 512, 903 P.2d 254
(1995).
A Florida court affirmed a $400 per month support order against an incarcerated father, imputing his previous income as a boat builder. The court found that his incarceration for drug-related offenses was voluntary and would not excuse payment of child support. Held v. Held, 617 So.2d 358 (Fla.App. 1993).
The plaintiff argues here, as in Gueits, that this court need not follow the Bridgeforth decision. This court continues to agree with the analysis and holdings in O'Connell and Deal as well as the sister state cases which hold that child support should not be abated by criminal incarceration. However, becauseBridgeforth and Parker were appeals from this division, they must be accorded precedential deference. "Simply stated, the statutory scheme under which this division was created provides for an appeal to a judge of the Superior Court. General Statutes §46b-231(n)(1), (6) and (7). Once a decision has been rendered on such an appeal, there is no right to further review, other than further appeal to the Appellate Court or the Supreme Court. General Statutes §§ 46b-231(o); 51-197f. This court simply can not disregard a published decision on an appeal to the Superior Court reversing it on essentially the very point at issue."Gueits v. Correa, supra, 82.
The principles of stare decisis and the hierarchical structure of our courts compel the granting of this modification. "Stare decisis, although not an end in itself, serves the important function of preserving stability and certainty in the law. Accordingly, a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. Maltbie, Conn. App. Proc., p. 226." (Internal quotation marks omitted.) Westchester Fire Ins. Co. v. AllstateIns. Co., 236 Conn. 362, 368, 672 A.2d 939 (1996); Lash v. AetnaCasualty Surety Co., 236 Conn. 318, 323-24, ___ A.2d ___
(1996); Florestal v. Government Employees Ins. Co.,236 Conn. 299, 305, ___ A.2d ___ (1996); Kluttz v. Howard,228 Conn. 401, 406, 636 A.2d 816
CT Page 4031-F (1994); White v. Burns, 213 Conn. 307, 335-36, 567 A.2d 1195
(1990); Herald Publishing Co. v. Bill, 142 Conn. 53, 62,111 A.2d 4 (1955); see also Linkletter v. Walker, 381 U.S. 618, 625-29,85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). As our Supreme Court stated many years ago: "There is not in the common law a maxim more eminently just, and promotive of the public convenience, than that of stare decisis. . . . Besides, if law well established may be annulled, by opinion, a foundation is laid for the most restless instability. The decisions of one court may be overruled by another court; and those of the latter will only have a transient efficacy, until some future court, dissatisfied with them, shall substitute new principles in their place. No system of inflexible adherence to established law can be as pernicious as such ceaseless and interminable fluctuations." Palmer'sadministrators against Mead, 7 Conn. 149, 157 (1828).
"Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of stare decisis makes no sense. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. Chaos would be created in our legal system if lower courts were not bound by higher court decisions. . . . The judicial hierarchy must be respected and acknowledged." State v. Satti, 38 Conn. Sup. 552, 560,454 A.2d 280 (App.Sess. 1982, Bieluch, J. dissenting); Ventura v. Veteransof Foreign Wars No. 269, Inc., 14 Conn.L.Rptr. 226 (1995); Karpv. American Legion Dept. of Conn., Inc., Superior Court, Judicial District of Hartford/New Britain at New Britain, doc. no. CV93-0462879 (Arena, J., Oct. 25, 1995); Properly Group v. Planning Zoning Commission of Tolland, Superior Court, Judicial District of Tolland, doc no. CV90-0046023 (Jackaway, J., April 22, 1991); see also Martin v. Town of Plainville, 40 Conn. App. 179, 182,669 A.2d 1241 (1996); Fluckiger v. Haddad, 7 CSCR 1003 (1992);Messina v. Vellafonck, 7 CSCR 109 (1991); Gumkowski v. U.S.S.Chowder Pot III, Ltd., Superior Court, Judicial District of New Haven at New Haven, doc. no. CV94-0361840 (Hartmere, J., Sept. 20, 1995)[6].
It has not escaped the notice of this court that of the four sister state precedents relied on by the court in Bridgeforth,
two appear to no longer be the law in their jurisdictions. Alaska courts no longer find child support excused by incarceration. While the earlier case of Clemans v. Collins, 679 P.2d 1041
CT Page 4031-G (Alaska 1984) allowed abatement of support, in Smith v. AlaskaDept. of Revenue, 790 P.2d 1352 (Alaska 1990), the court approved the establishment of an order from inmates because prison work earnings provided a basis for an ability to pay. In a more recent toughening of its position, the court refused to overturn a $50 per month order even where the inmate had no prison earnings, finding "no basis for concluding that her incarceration should excuse [child support], just as it will not excuse any other debt Douglas owes." Douglas v. Alaska Dept. of Revenue, 880 P.2d 113,116 (Alaska 1994).
Similarly, Foster v. Foster, supra, appears to no longer be the law in New York. In a subsequent case, the trial court denied a motion to modify by reason of incarceration, indicating that any unpaid support could accrue during the sentence, to be dealt with after the obligor's release. The Court of Appeals affirmed, observing that the father's financial condition was due to his own wrongful conduct[7]. Knights v. Knights, 71 N.Y.2d 865,527 N.Y.S.2d 748, 522 N.E.2d 1045 (1988). More recent cases in the intermediate appellate level follow Knights rather than Foster.
See Romanous v. Romanous, 181 App.Div.2d 872, 581 N.Y.S.2d 410
(1992)[8]. In Johnson v. Junjulas, 215 App.Div.2d 559, 626 N.Y.S.2d 857
(1995), Knights is cited as authority to affirm denial of a modification for an obligor complaining of a loss of income following suspension of his driver's license. Where a trial court suspended a pendente lite child support order because the plaintiff father's income was reduced by reason of his incarceration after conviction of a crime, the appellate division reversed, holding that the change of circumstances was a "self-imposed hardship." Frasca v. Frasca, 213 App.Div.2d 589,624 N.Y.S.2d 259 (1995).
Such changes in the law in states relied on by the court setting the precedent may well be grounds for a review. This court, in Gueits v. Correa, supra, 85-89, set forth additional considerations[9] which need not be repeated here. However, a respect for the judicial hierarchy dictates that this is not the appropriate forum for such a review. "If the plaintiffs seek a reversal of Bridgeforth, they should appeal this, or a similar decision, to the Superior Court, or, if necessary, beyond." Id., 82.
Accordingly, the motion to modify is granted, and the support order is reduced to zero, effective January 16, 1996.
Lifshitz, Family Support Magistrate Division CT Page 4031-H