Orland P. GLENN, Appellant
(Defendant),

v.

Emily M. GLENN, Appellee (Plaintiff).

No. 92–126.

Supreme Court of Wyoming.

March 16, 1993.

Orland P. Glenn, pro se.

No appearance by appellee.

Before MACY, C.J., and THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. Ret.

CARDINE, Justice.

This appeal is from an order modifying appellant's child support obligation by reducing it to a monthly payment of $100. Appellant contends that his Rawlins penitentiary inmate incentive pay should not be subject to child support obligations at all.

We affirm.

Appellant presents these issues:

1. The district court exceeded its jurisdiction when it ordered that appellant pay child support out of income received from the Wyoming State Penitentiary's Incentive Pay Program.

2. The district court exceeded its jurisdiction when it ordered that the appellant pay child support out of income which totals less than that affording garnishment jurisdiction under W.S. 40–14–505(c).

3. The district court exceeded its jurisdiction and abused its discretion when it ordered the appellant to pay child support in an amount which equals and/or exceeds the appellant's income.

4. The district court erred and abused its discretion when it ordered child support payments as a subterfuge for awarding the appellee a second judgment against the appellant for acts which were resolved in an earlier and separate tort action.

Orland P. Glenn (appellant) and Emily Glenn were married in 1968. They were divorced September 21, 1987. Because of appellant's threats and violent acts, a protective order had been issued. Other protective measures were included in the divorce decree such as requiring the presence of a peace officer when he removed his belongings.

The divorce decree required appellant to pay child support in the amount of $110.00 per child per month. Since the parties had five children, the initial payments were $550.00 per month. Appellant made seven payments of $550.00 and one payment of $275.00. Beginning in April of 1988 appellant was in arrears. The monthly amount owing has been reduced twice, apparently due to emancipation of two of their minor children. Even with those reductions, appellant was $19,085.00 in arrears of his child support obligation as of December of 1991.

On July 19, 1991, appellant filed a petition for temporary modification of child support. Appellant stated that his change of circumstance was his conviction of a felony and subsequent sentence for a term of "natural life" in the Wyoming State Penitentiary. Appellant's conviction and subsequent incarceration stem from the attempted first degree murder of Emily Glenn, his ex-wife, when he shot her in front of one of their children.

In his petition, appellant claimed that he has monthly personal expenses for items not provided by the Wyoming State Penitentiary and that those expenses meet or exceed his monthly income; therefore, he has nothing left with which to pay child

support. Appellant also alleged that his income will not substantially change during the period of his incarceration and that the court should modify the child support order to meet his change in circumstances.

The district court conducted a hearing on the petition to modify on December 5, 1991. The district court found that there was a substantial change in circumstances which allowed the court to reduce appellant's child support obligation. The district court entered an order reducing appellant's child support obligation to $100.00 per month starting January 1, 1992, and continuing until all of the parties' children reach the age of majority, are emancipated, or become self supporting. Appellant filed a timely notice of appeal from the district court's order.

Appellant argues that the district court abused its discretion. Concerning abuse of discretion, we have said:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

*Roberts v. Roberts*, 816 P.2d 1293, 1297 (Wyo.1991) (*quoting Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980)).

When we review a child support order that is within the statutory guidelines, we have said that "the child support guidelines 'shall be rebuttably presumed to be the correct amount of child support to be awarded.'" *Hasty v. Hasty*, 828 P.2d 94, 98 (Wyo.1992) (*quoting* W.S. 20-6-302(a)).

## PAYMENT OF CHILD SUPPORT OUT OF THE WYOMING STATE PENITENTIARY'S INCENTIVE PAY PROGRAM

■ Appellant admits that he receives between $60 to $80 per month in prison incentive pay. Wyoming Statute 7-16-203 (1987) allows a person in confinement to receive compensation as specified by the

Board of Charities and Reform. This section has now been amended in recognition of the establishment of the Department of Corrections. W.S. 7-16-203 (Supp.1992).

Any earnings accrued by the prisoner are to be distributed in accordance with the following provision:

(a) Payment for services performed by any prisoner shall be deposited in the trust and agency account at the institution and shall be disbursed for the purposes provided in this subsection and in the order specified:

(i) Personal necessities;

(ii) Victim compensation;

(iii) Support of dependent relations of the prisoner;

(iv) Reimbursement for the services of public defender or court appointed counsel; and

(v) Remaining funds shall be paid the prisoner upon parole or final discharge.

W.S. 7-16-205 (1987). (This section has also been amended *see* W.S. 7-16-205 (1992)). Appellant contends that the order in which the items are listed establishes their priority. Appellant argues, therefore, that child support obligations are a lower priority than personal necessities of the prisoner and he should pay nothing.

■ Appellant fails to make clear what necessities he would be deprived of as a result of the child support order. While it is true that child support obligations are not the first on the list, we need not now decide the effect of the listing in this case, for appellant has made no credible showing that payment of this minimal child support will deprive him of necessities during his prison incarceration. Since child support obligations are specifically designated in the statute, it is clear that the legislature intended they be paid where reasonably possible.

## ORDERING APPELLANT TO PAY CHILD SUPPORT WHICH EQUALS AND/OR EXCEEDS HIS INCOME

■ Appellant argues that the district court exceeded its jurisdiction and abused

its discretion when it ordered him to pay child support in an amount which "equals and/or exceeds" his income. Appellant then cites two cases for the proposition that an incarcerated parent is not liable for child support unless it can be shown that he has income or assets sufficient to make the payments. *Clemans v. Collins,* 679 P.2d 1041, 1042 (Alaska 1984); *Matter of Marriage of Edmonds,* 53 Or.App. 539, 633 P.2d 4, 5 (1981), *overruled by Matter of Marriage of Willis,* 109 Or.App. 584, 820 P.2d 858 (1991). The Oregon Court of Appeals has now decided that a father cannot escape his financial obligation to his children simply because he is behind bars. Therefore, appellant's citation to *Edmonds* need not be addressed. Even so, what the district court did in this case was consistent with *Clemans.* *Clemans* holds that if an incarcerated parent has no ability to pay, he is not liable for child support. Here, however, the incarcerated parent does have the ability to pay.

Appellant acknowledges that he receives $67.50 a month from the Wyoming State Penitentiary and $36.00 a month in military disability payments. Therefore appellant has a monthly income of $103.50. Appellant also acknowledges that he receives monetary gifts from persons outside of the penitentiary. During a ten-month period these gifts totaled $185.83.

■ In the cases appellant cites, the incarcerated person had no income. Those cases are distinguishable because here appellant has admitted income sufficient to meet the child support obligation the judge ordered. Our research has uncovered additional cases which show that many courts follow the *Clemans* approach, that is, if the incarcerated parent does not have income, he is not required to pay child support during his incarceration. *Foster v. Foster,* 99 A.D.2d 284, 471 N.Y.S.2d 867 (2 Dept. 1984); *Pierce v. Pierce,* 162 Mich.App. 367, 412 N.W.2d 291 (1987). *Pierce* also acknowledges that if the incarcerated parent does have assets or income while in prison, that income can properly be applied against the outstanding support obligation. *Pierce,* 412 N.W.2d at 293. We agree with this rule. When an incarcerated parent has income, that income can fairly be applied to the child support obligation.

The rule we adopt is consistent with *Clemans,* and it is not as far as some courts have gone. The Nebraska Supreme Court has ruled that in all cases an incarcerated parent should pay child support. *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615, 618 (1985). The Nebraska court reasoned that the obligation should not be modified where the means to pay the obligation was eliminated through criminal activity.

It must be remembered that appellant did receive a substantial reduction in the amount of child support he is required to pay. He is appealing because he wanted the obligation suspended until the end of his term of natural life. The district judge declined to do this but did reduce the amount in accordance with appellant's ability to pay.

The district judge did what the child support guidelines required of him. The statute requires that if the parent has an income of less than $500.00, the child support award must be made in accordance with ability to pay, but in no event shall the award be less than $50.00. W.S. 20-6-304 (1992). The district judge made no error in reducing the child support payment to $100.00 per month.

After reviewing the record, we note that the hearing on the petition to modify the support order was not transcribed. However, the record is still adequate. The record contains appellant's acknowledgments of his income. We are also entitled to give the district court due deference and assume that the award was made after an appropriate finding concerning appellant's ability to pay. In addition, appellant raises no issue about his ability to pay or any finding concerning it.

■ Appellant next claims that the Board of Charities and Reform has jurisdiction over the incentive pay program and therefore the district court had no jurisdiction to enter the child support order. Appellant misunderstands the role of the district court. While the district court entered an order that would affect his incen-

tive pay, the district court did not attempt to administer the fund or encroach on the role of the Board. The district court merely established an obligation for support of relatives. The Board of Charities and Reform (now the Department of Corrections) will ultimately administer the fund.

## GARNISHMENT JURISDICTION

■ Appellant argues that the district court exceeded its jurisdiction by ordering child support out of income which totals less than what is required for garnishment under W.S. 40–14–505(c). Appellant is correct that § 40–14–505(c) limits the availability of garnishment in some situations. However section § 40–14–502 makes clear that it applies only to "actions or other proceedings to enforce rights arising from consumer credit sales, consumer leases, and consumer loans; and, in addition, to extortionate extensions of credit." W.S. 40–14–502 (1977). That statutory section is not relevant.

■ Appellant also cites W.S. 1–15–511. Appellant is correct that this section also limits the scope of garnishment as a remedy. However before any garnishment can take place, and also before any objection to it can be raised, a money judgment must be obtained. W.S. 1–15–502 (1988). The judgment must then be taken to the clerk of court who must issue a writ for continuing garnishment against the judgment debtor's employer. W.S. 1–15–502. It is clear from the record that none of those steps have taken place. It would be premature for this court to speculate about whether garnishment was proper when it has not occurred. All we have jurisdiction to review is the district court's child support order which we find proper. Therefore, we decline to address the garnishment issue since it is premature.

## SUBTERFUGE FOR AWARDING A SECOND JUDGMENT IN AN EARLIER TORT ACTION

■ Appellant claims that the district court erred because it ordered child support as "subterfuge" for actually awarding the mother a second judgment against appellant for his tortious conduct. Appellant's claim is incorrect. The child support obligation began before appellant's criminal and tortious actions; therefore, the district court could not have been awarding child support as a pretense for a tort award. The record demonstrates that the district court's order was to benefit his children and not for another purpose. If appellant's allegation were so, the district court would have increased his child support obligation rather than reducing it. Appellant fails to present any evidence of this claim other than mere assertion.

■ Appellant also argues that because the child support order was subterfuge for awarding an additional tort judgment, the district court's order is void for violating *res judicata.* Appellant fails to understand that the tort and child support action are entirely separate, and the district court's order in no way affected the tort judgment. The district court never disturbed the finality of the tort action, and appellant's argument is without merit.

## CONCLUSION

The district court did not err in reducing the child support obligation to $100.00. The district court's order is within the statutory guidelines, and appellant has acknowledged he has the ability to pay. Therefore, the district court order was properly entered. Having found no error, we affirm.

Affirmed.

URBIGKIT, Justice, Retired, dissenting.

Orland P. Glenn committed a murderous assault upon his ex-wife for which he received a life term prison sentence. Additionally, lacking substantial income through trial and subsequent confinement, he has now accumulated $19,085 in delinquent child support. To this burden, an award for restitution of $18,950.65 must be added. Furthermore, Glenn's ex-wife also obtained a default judgment on November 3, 1988 in the amount of $500,000, which has accrued unpaid interest at a ten percent annual amount. On October 4, 1988,

Glenn's ex-wife and mother of his children, Emily M. Glenn, executed an assignment for any child support payments which she might receive to the predecessor of the present Wyoming State Department of Family Services for reimbursement of the "welfare" benefits that she has received.

Appellant, looking at the monumental debt and the accruing numbers which, because of the age of his children, had declined from $550 to $300 per month, filed an application for the remission of the child support obligation. Following a hearing on a petition to modify child support and by this majority opinion, appellant is obligated to pay $100 per month for child support from a $36 monthly military disability payment and a prisoner incentive payment of $67.50. This is, in essence, a further punishment by a 1992 attachment of funds used for personal maintenance at the penitentiary (except $3.50 per month), which will constitute additional retribution beyond the life term confinement sentence entered approximately four years ago.

Maybe that is justice. Maybe it is, as appellant contends, moving numbers on the ledger. First, I find that efforts to obligate a person with a life sentence to provide funds for replacement of state obligations under aid to dependent children programs to be next to totally absurd. Beyond that, however, unless we are just moving numbers without collective purpose, I find clear violation of federal statutes and state laws.

This is true if we really intended to collect something for the Department of Family Services, or perhaps for the mother,[1] in addition to the $15 remaining due for the Victim's Compensation Fund; $18,950.65 restitution; an unpaid judgment which is now approximately $735,000; and unpaid child support accrued through December 1991 of $19,085.

Candidly, we need to consider whether this decision is really intended to involve actual collection or, conversely, is a meaningless exercise in semantics to avoid the possibility of ignorant individuals, with malicious intent, misconstruing the decision for ulterior purpose in some future retention campaign.

I choose to believe that the majority intends some real result in writing the opinion and, consequently, I examine the meaning of a $100 per month child support order entered against a life term prisoner whose income consists of a $36 military disability payment and $67.50 incentive compensation for prison labor.

Starting with state law, we find Wyo. Stat. § 1–15–107(b)(ii) (1988), which provides exemptions of income from attachment, including "Veteran's benefits," and "[o]ther exemptions as provided by law." Wyo.Stat. § 1–15–107(b)(x).

In order to consider the confinement incentive compensation receipts, we find from Wyo.Stat. § 7–16–205 (Cum.Supp. 1992) an established order of priority for prisoner earnings: (i) personal necessities; (ii) victim's compensation; and (iii) support for dependent relatives of the prisoner. The child support guidelines, Wyo.Stat. § 20–6–304(b) (Cum.Supp.1992), provide: "In the case of an obligor having a monthly net income of less than five hundred dollars ($500.00), the support obligation *shall be based on the obligor's ability to pay,* but in no case shall the support obligation be less than fifty dollars ($50.00) per month." (Emphasis added.)

The income withholding statute, Wyo. Stat. § 20–6–210(b)(iii) (Cum.Supp.1992), provides: "That the amount actually withheld for support combined with the fee authorized by W.S. 20–6–212(c) shall not exceed thirty-five percent (35%) of the obligor's disposable income received from that payor[.]"

The majority accurately recognizes that Wyo.Stat. § 40–14–505(b) (1977) has, in the Uniform Consumer Credit Code statute, a garnishment limitation proviso which does not apply to child support obligations. The majority should have looked beyond to 15 U.S.C. § 1673(a), where child support is

1. The issue of who receives the recovered funds—the state in repayment or the family for additional support—is directly involved in the standard of need controversies currently before this court in *Davidson v. Sherman,* Wyoming Supreme Court, Docket No. 92–63.

recognized as exempt by the UCCC type formula to 15 U.S.C. § 1673(b)(2):

> The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—
> (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
> (B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week[.]

Furthermore, it is clear that 42 U.S.C. § 659 does not establish "a right to garnishment of disability benefits." The *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) statute, 10 U.S.C. § 1408, provides only a fifty percent exemption to court-ordered lien imposition on military pay:

> The total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay.

10 U.S.C. § 1408(e)(1).

> Notwithstanding any other provision of law, the total amount of the disposable retired or retainer pay of a member payable by the Secretary concerned under all court orders pursuant to this section and all legal processes pursuant to section 459 of the Social Security Act (42 U.S.C. 659) with respect to a member may not exceed 65 percent of the disposal retired or retainer pay payable to such member.

10 U.S.C. § 1408(e)(4)(B).

It is certain that *McCarty*, 453 U.S. 210, 101 S.Ct. 2728 in no regard considered *disability benefit payments* to the veteran. *Id.* at 213, 101 S.Ct. at 2731. It is likewise

apparent that the Uniformed Services Former Spouse Protection Act, P.L. 97–252, Title X, § 1006, 96 Stat. 737, 10 U.S.C. § 1408, also excluded disability benefits from any attachment authorization. *See* 10 U.S.C. § 1408(a)(4); and *Rose v. Rose*, 481 U.S. 619, 644, 107 S.Ct. 2029, 2043, 95 L.Ed.2d 599 (1987), White, J., dissenting. Consequently, if I believe that this case has any meaning, considering the extent of activities already pursued, there has to be something more at stake than increasing the delinquency in the child support account by $100 per month. The reason I dissent is because of the anticipation the majority intent reflects to reduce this life term prisoner to usable income for maintenance of $3.50 a month as further punishment.[2]

I fail to see reality in this regard considering the fifty percent limitation provided in federal law for both military disability retirement benefits and employment earnings. I find a disregard of fact in denying a real need for funds for someone sentenced to a life term. Beyond that, child support has an inferior position, not only to the necessities of the prisoner, but also to the unpaid $18,950.65 restitution. Further, I question that under the guidelines, the amount of $100 out of $103.50 morally or practically reaches compliance with extensive case law of this court regarding "obligor's ability to pay" as we find in Wyo. Stat. § 20–6–304(b) where the stated minimum is $50 and not everything.

This is not a contempt action, nor does the father in this case, facing a life sentence, have cause to fear contempt confinement punishment from non-payment while imprisoned. *Cf. Barbour v. Barbour*, 642 S.W.2d 904 (Ky.App.1982), where contempt might be used, but garnishment activities were not considered. *See also Elmwood v. Elmwood*, 295 N.C. 168, 244 S.E.2d 668 (1978), where the court recognized retirement disability pay was not "remuneration

**2.** I find it ludicrous and absurd to include gifts from friends in computation of funds for a prisoner's necessities. If he had excessive funds in his account, those gifts would not be made. Conversely, if the donors wanted to subsidize the Wyoming Department of Family Services, AFDC accounts, by gifts, they could have done

that. We should confine this decision by analysis of whether a very modest disability payment and statutorily created confinement employment compensation can be taken essentially in full, leaving the prisoner virtually without any money for his penitentiary existence.

for employment." Further cases have held that disability benefits are exempt from attachment unless specific provisions of federal law are otherwise provided. *See Sanchez Dieppa v. Rodriguez Pereira*, 580 F.Supp. 735 (D.P.R.1984).

The concepts advanced in *Clemans v. Collins*, 679 P.2d 1041 (Alaska 1984); *Pierce v. Pierce*, 162 Mich.App. 367, 412 N.W.2d 291 (1987); *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985); and *Foster v. Foster*, 99 A.D.2d 284, 471 N.Y.S.2d 867 (1984), relating to reality and reasonableness in assessment of child support against the incarcerated, have, in my opinion, perverse persuasion from that utilized by this majority. The fact is, in this case, that the decision would leave $3.50 for a prisoner to spend on monthly necessities—that is essentially nothing. *See Morehead v. Morehead*, 811 P.2d 721 (Wyo.1991); *Booker v. Booker*, 626 P.2d 561 (Wyo. 1981); and *Lonabaugh v. Lonabaugh*, 46 Wyo. 23, 22 P.2d 199 (1933).

This dissent just touches the surface of the complexities involved in any collection effort for child support in this case from the sources of funds to which attention is directed. Addressing reality and reason, I would consider that if this effort is to really seek a way to provide money for the inmate's family in some amount and not just to create collection litigation for the courts, reason, statutes, and perhaps even some modest justice would determine that a maximum order should have been entered for the lesser of $50, or fifty percent of the prisoner's earnings and disability retirement benefits. This, in itself, would only be proper if both the inmate and the ex-wife first waived the priority requirement for payment on the restitution obligation.

This decision, by incomplete examination of a complex composite of statutes and case law, violates maximum assessment on collection provisions in both state and federal law and, in text, totally fails in reasoned analysis.

Consequently, I dissent.