650 A.2d 736

Natasha WILLS

v.

Randy W. JONES.

No. 412, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Dec. 14, 1994.

Angela M. Eaves, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Hillary Galloway Davis (Law Office of J. Edward Davis, on the brief), Towson, for appellee.

Argued before BISHOP, ALPERT and FISCHER, JJ.

BISHOP, Judge.

Appellant presents a single issue: whether the trial court erred when it suspended appellee's obligation to pay child support for the duration of his incarceration.

Appellee, Randy W. Jones, filed a motion for stay of enforcement of child support obligation in the Circuit Court for Anne Arundel County. Appellee alleged that his incarceration at the Maryland Correctional Training Center ("MCTC") was a material change of circumstances under Md.Fam.Law Code Ann., § 12–104(a) (1991). After a hearing, the master in chancery denied appellee's motion and issued a report and recommendation that continued appellee's child support obligation during appellee's incarceration. Appellee filed a timely notice of exceptions to the master's report and recommendations. After a hearing, the circuit court sustained appellee's exceptions and granted appellee's motion to stay enforcement of child support obligation. Appellant, Natasha Wills, noted a timely appeal to this Court.

*Facts*

Appellee is presently serving a mandatory ten-year sentence at the MCTC and earns $20 per month in the MCTC's food preparation center. Prior to his incarceration, Appellee paid $50 per week in child support for the parties' child. Appellee has no source of income, other than his MCTC earnings, and no assets. Consequently, if appellee's child support obligation continues during his incarceration, appellee will be approximately $26,000 in arrears on his support payments upon his release from the MCTC.

Appellee asserts that his incarceration renders him involuntarily impoverished. This impoverishment, he argues, constitutes a material change of circumstances justifying a modification of his child support obligation. Appellant, however, argues against the suspension of appellee's child support obligation, claiming that appellee voluntarily committed the crime that resulted in his imprisonment and, therefore, he is "voluntarily impoverished" under Md.Fam.Law Code Ann., § 12–204(b) (1991).

Under the Maryland Child Support Guidelines, if a parent is voluntarily impoverished, then child support may be calculated based on a determination of potential income. *Id.* § 12–204(b)(1). " 'Potential income' means income attributed to a parent determined by the parent's employment potential and probable earnings level based on, but not limited to, recent work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community." *Id.* § 12–201(f).

In his report and recommendation, the master acknowledged that no reported Maryland case exists concerning "the issue of whether an obligor's incarceration constitutes a material change of circumstance justifying a modification/suspension of payment of child support." After considering relevant cases from other jurisdictions, the master found persuasive case law that regarded incarceration as self-induced and voluntary for purposes of child support modification requests. The master recommended that appellee be held "responsible

to suffer all repercussions of his self-inflicted diminution of earning capacity" because "[t]he needs of the minor child are not suspended during his period of incarceration, but continue despite it." In addition, the master noted that the strong public policy considerations established by the Maryland Child Support Guidelines support the conclusion that an obligor's incarceration does not constitute a material change of circumstances for the purposes of staying an obligation to pay child support.

After a hearing on appellee's exceptions to the master's report and recommendations, the circuit court rejected the master's legal conclusions and granted appellee's motion to stay enforcement of child support obligation. According to the court, although "[t]he criminal normally commits the crime because ... he by his free will committed the wrongful act, ... it is not voluntary in the sense that the criminal wanted to avoid support." The circuit court held that "the better reasoning is that an obligor who is incarcerated, for reasons not related to his family, has not voluntarily impoverished himself because he has no intent of losing income to deny his family.... Accordingly, ... the obligation should cease during incarceration, barring some source of income or assets."

## Discussion

■■■ Because no Maryland case has determined whether incarceration constitutes voluntary impoverishment, we find the law in other jurisdictions instructive. The decisions in the out-of-state cases, however, are not uniform. "Under the broadest summary, courts have decided this issue based on whether the obligor possessed assets against which the obligation could be charged and/or the voluntary nature of the obligor's criminal activity." *In re Marriage of Phillips*, 493 N.W.2d 872, 874 (Iowa Ct.App.1992).

In many jurisdictions, state courts deny incarcerated obligors modification of their child support payments because the obligors possess assets against which their support obligations may be charged. *See Division of Child Support Enforcement*

*ex rel. Harper v. Barrows,* 570 A.2d 1180, 1183 (Del.1990) (denying modification because obligor had assets that could be easily liquidated to satisfy the child support obligation); *Vetternack v. Vetternack,* 334 N.W.2d 761 (Iowa 1983) (denying modification because obligor had equity in marital home); *Redmon v. Redmon,* 823 S.W.2d 463 (Ky.Ct.App.1992) (denying modification because obligor failed to claim indigency or lack of assets); *Sodders v. Sodders,* 210 Neb. 276, 313 N.W.2d 927 (1981) (denying modification because obligor could draw on existing trust to satisfy support obligation). In such jurisdictions, courts usually require an affirmative showing that the obligor has assets from which funds may be generated to cover the child support payments during the period of incarceration. *See Pierce v. Pierce,* 162 Mich.App. 367, 412 N.W.2d 291, 292 (1987); *Clemans v. Collins,* 679 P.2d 1041, 1042 (Alaska 1984).

Even an incarcerated obligor, with a meager monthly income, may be ordered to pay child support. In *Glenn v. Glenn,* 848 P.2d 819 (Wyo.1993), the Supreme Court of Wyoming held that the trial court did not err in ordering an incarcerated obligor to pay his child support obligation out of the income he received from the state penitentiary's incentive program. The appellant in *Glenn* acknowledged that he received $67.50 a month from the Wyoming State Penitentiary and $36.00 a month in military disability payments. Therefore, appellant's monthly income totalled $103.50. The *Glenn* court noted:

It must be remembered that appellant did receive a substantial reduction in the amount of child support he is required to pay. He is appealing because he wanted the obligation suspended until the end of his term of natural life. The district judge declined to do this but did reduce the amount in accordance with appellant's ability to pay.

*Id.* at 822. According to the court, "if an incarcerated parent has no ability to pay, he is not liable for child support. Here, however, the incarcerated parent does have the ability to pay." *Id.*

Other jurisdictions, however, have denied support modification to incarcerated obligors having no income and possessing no assets against which the support obligation can be charged. These jurisdictions focus on "the voluntariness of the obligor in his actions which led to incarceration." *In re Marriage of Phillips,* 493 N.W.2d 872, 876–77 (Iowa Ct.App.1992); *see Koch v. Williams,* 456 N.W.2d 299 (N.D.1990) (denying modification based on voluntariness of obligor's actions); *Parker v. Parker,* 152 Wis.2d 1, 447 N.W.2d 64 (App.1989) (denying modification even though incarcerated obligor possessed no other assets).

For example, in *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615 (1985), the Supreme Court of Nebraska held that because "[i]ncarceration is certainly a foreseeable result of criminal activity[,] . . . no sound reason [exists] to relieve one of a child support obligation by virtue of the fact that he or she engaged in criminal conduct." *Id.,* 369 N.W.2d at 618. The appellant in *Ohler* sought modification of the decree dissolving his marriage in order to suspend his child support obligation. The appellant's application for modification alleged that his incarceration, which resulted in an elimination of income, constituted a material change of circumstances warranting a temporary termination of his child support obligation. The *Ohler* court recognized that the appellant was requesting relief in equity and that "one who seeks equity must come with clean hands." *Id. See also, Noddin v. Noddin,* 123 N.H. 73, 455 A.2d 1051, 1053 (1983). According to the *Ohler* court, "where one seeks relief from the obligation to pay child support on the basis that he or she is incarcerated . . . equity should not and will not act to give relief." *Id.* The court concluded that "[t]here is no reason those who have had to step in and assume the applicant's obligation should not be reimbursed by the applicant should his future position enable him to do so." *Id.*

There are also jurisdictions that hold that, depending upon the particular circumstances of a case, an obligor's incarceration may or may not constitute a material change of circumstances justifying the termination or suspension of a child support obligation. These jurisdictions reject the theory that,

"as a matter of law,[ ] criminal conduct must be treated as deliberate conduct designed to reduce income to avoid paying child support." *Voecks v. Voecks*, 171 Wis.2d 184, 491 N.W.2d 107, 109 (1992).

In *Voecks*, the Court of Appeals of Wisconsin recognized that, "[a]lthough [the appellant's] incarceration resulted from his deliberate criminal acts, there [was] no evidence that [he] engaged in the criminal conduct with the intent to reduce his income to avoid paying child support." *Id.* The court affirmed the lower court's decision to modify the appellant's child support obligation based on his incarceration. The court concluded that "incarceration is a factor that the court may consider when determining whether it should exercise its discretion to modify child support," *id.*, and that "[a]ll that is required for us to affirm a trial court's exercise of discretion is a demonstration that the trial court examined the evidence before it, applied the proper legal standards and reached a reasoned conclusion." *Id.*

Still, other jurisdictions rely on the plain meaning of the terms used in their statutes, and the policy reasons underlying those statutes, to guide their decisions. Like the court in *Voecks*, the Court of Appeals of Ohio determined, in *Peters v. Peters*, 69 Ohio App.3d 275, 590 N.E.2d 777 (1990), that the appellant's petition for modification of child support should be granted because of his incarceration. Unlike the court in *Voecks*, however, the court in *Peters* reasoned that, under the statute, the appellant's incarceration constituted a material change of circumstances warranting a modification of child support. *Id.*, 590 N.E.2d at 777. The *Peters'* court stated that:

Appellant's incarceration bears a close resemblance to a situation where an employer terminates an individual's employment. In both instances the individual arguably has committed some culpable act which has rendered necessary the actions of another. Yet in neither case can the elimination of the income be termed "voluntary," and therefore not affecting the child support obligation.

*Id.,* 590 N.E.2d at 778. The court concluded that public policy supported its holding terminating an obligor's child support obligation during incarceration. "[T]o hold otherwise would possibly expose appellant to a criminal contempt prosecution for his failure to pay child support . . . [I]t would be unconscionable to criminally punish an individual for neglecting to do what state action has prevented him from doing." *Id.*

Similarly, in *In re Marriage of Blickenstaff,* 71 Wash.App. 489, 859 P.2d 646 (1993), the Court of Appeals of Washington interpreted the term "voluntary unemployment," as used in its statutes governing child support, to exclude incarceration. The court recognized that the Washington Child Support Commission drafted standards for child support determination, under which income is not imputed for an *unemployable* parent. The court then determined that

[b]y preventing courts from imputing income to "unemployable" parents while allowing courts to impute income to "voluntarily unemployed" parents, Instruction 15 [of the Standards for the Determination of Child Support and Use of the Schedule] prevents courts from finding "unemployable" parents to be "voluntarily unemployed." The dictionary defines the term unemployable, used as an adjective, as "not acceptable for employment as a worker". Webster's Third New International Dictionary (2nd College ed. 1969) at page 2493. Prisoners are obviously unacceptable for employment as workers due to their incarceration; therefore, prisoners are unemployable. Since courts cannot find "unemployable parents" to be "voluntarily unemployed" it follows that courts may not find incarcerated parents to be voluntarily unemployed.

*Id.,* 859 P.2d at 649. In *Blickenstaff,* the court held that, "[b]ecause [the obligor] was not imprisoned for a crime of nonsupport or for civil contempt for failure to pay support, [the obligor] was not 'voluntarily unemployed[.]' ". *Id.,* 859 P.2d at 651. The court cautioned, however, that its holding "[did] not mean . . . that the trial court was required to grant [the obligor's] petition. . . . Where the obligor has *other means of paying* his or her child support obligation, the trial

court has the discretion to enforce the obligation even in the face of a total lack of income." *Id.* (emphasis added). This is because "[t]he court considers all factors bearing upon the needs of the child and the parent's ability to pay: Income or lack thereof, is only one factor." *Id.* The *Blickenstaff* court, therefore, remanded the case to the trial court and directed the court to "determine whether [the obligor's] pension fund, or any other asset, [was] available to [the obligor] and, if warranted, to modify the decree appropriately." *Id.*, 859 P.2d at 652.

### The Case Sub Judice

A parent's obligation "to provide [child] support is not perfunctory, to be performed only at the voluntary pleasure or whimsical desire of the parent." *Goldberger v. Goldberger*, 96 Md.App. 313, 324, 624 A.2d 1328, *cert. denied*, 332 Md. 453, 632 A.2d 150 (1993). " '[T]he duty of parents to provide for the *maintenance* of their children is a principle of natural law; an obligation . . . laid on them not only by nature herself, but by their own proper act, in bringing [their children] into the world. . . .' " *Carroll County v. Edelman*, 320 Md. 150, 170, 577 A.2d 14 (1990) (citation omitted). Accordingly, the General Assembly has made it a crime in Maryland for parents to fail to support their minor children. Md.Fam.Law Code Ann., § 10–203 (1991).

"The parents of a minor child are jointly and severally responsible for the child's support, care, nurture, welfare, and education. . . . This obligation varies in accordance with, among other things, the respective financial resources of the parties." *Broseus v. Broseus*, 82 Md.App. 183, 206, 570 A.2d 874 (1990). The Child Support Guidelines, codified at Md. Fam.Law Code Ann., § 12–201 *et seq.* (1991 & Supp.1994) ("the Guidelines"), instruct courts on calculating and determining child support obligations. Under the Guidelines, the trial court must first calculate each parent's income. The Guidelines define income as the "actual income of a parent, if the parent is employed to full capacity[,] or . . . potential income of a parent, if the parent is voluntarily impoverished." *Id.* § 12–201(b). "The legislature's purpose in including potential

income was to implement state and federal policy of requiring adequate support by precluding parents from avoiding their obligations by deliberately not earning what they could earn." *Goldberger*, 96 Md.App. at 325, 624 A.2d 1328.

The Guidelines provide that only a "material change of circumstances" justifies the modification of an existing child support award. Md.Fam.Law Code Ann., § 12–202(b)(1) (1991). With regard to petitions for child support modification, "voluntary impoverishment" does not constitute a material change of circumstances. 96 Md.App. at 326–27, 624 A.2d 1328. Although the Guidelines do not define the term "voluntarily impoverished," we have held that, for the purposes of the Guidelines, "a parent shall be considered 'voluntarily impoverished' whenever the parent has made the free and conscious choice, not compelled by factors beyond his or her control, to render himself or herself without adequate resources." *Id.* at 327, 624 A.2d 1328; *see also, John O. v. Jane O.,* 90 Md.App. 406, 421–22, 601 A.2d 149 (1992) (similarly defining "voluntarily impoverished," in the context of a divorce proceeding).

The issue of voluntary impoverishment most often arises in the context of a parent who reduces his or her level of income to avoid paying support by quitting, retiring or changing jobs. The intent of the parent in those cases is often important in determining whether there has been voluntary impoverishment. Was the job changed for the purpose of avoiding the support obligation and, therefore, voluntary, or was it for reasons beyond the control of the parent, and thus involuntary?

*Goldberger,* 96 Md.App. at 326, 624 A.2d 1328.

In *John O. v. Jane O.,* we set forth several factors to be used by Maryland courts when determining whether a parent has freely chosen to reduce his or her level of income:

(1)   his or her current physical condition;

(2)   his or her respective level of education;

(3)    the timing of any change in employment or other financial circumstances relative to the divorce proceedings;

(4)    the relationship between the parties prior to the initiation of divorce proceedings;

(5)    his or her efforts to find and retain employment;

(6)    his or her efforts to secure retraining if that is needed;

(7)    whether he or she has ever withheld support;

(8)    his or her past work history;

(9)    the area in which the parties live and the status of the job market; and

(10) any other considerations presented by either party.

*Jane O. v. John O.,* 90 Md.App. at 422, 601 A.2d 149. With regard to child support cases, we have recognized that "[w]hether the voluntary impoverishment is for the purpose of avoiding child support or because the parent simply has chosen a frugal lifestyle for another reason, doesn't affect that parent's obligation to the child." *Goldberger,* 96 Md.App. at 326, 624 A.2d 1328. "A parent who brings a child into this world must support that child, if he has or reasonably could obtain, the means to do so." *Id.* at 327, 624 A.2d 1328 (citing *Department of Social Servs. v. Edelmann,* 320 Md. 150, 170, 577 A.2d 14 (1990)).

In the case *sub judice,* the circuit court stayed appellee's obligation to pay child support for the duration of his incarceration because it classified appellee's incarceration as *"involuntary* impoverishment." The wide discretion of the chancellor to make an award of child support will not be set aside or modified unless clearly erroneous. *See Wooddy v. Wooddy,* 258 Md. 224, 228, 265 A.2d 467 (1970). In *John O.,* we stated that

[t]he term "voluntarily impoverished" was added by the House Judiciary Committee just prior to the final passage of the Child Support Guidelines. Prior to the insertion of the term "voluntarily impoverished," § 12–201(b)(2) read

"potential income of a parent, if the parent is unemployed or underemployed." By substituting the term "voluntarily impoverished" for "unemployed or underemployed," the Legislature evinced its intention that the courts be able to consider whether a person had purposely taken a reduction in salary to avoid his or her support obligations.

*John O. v. Jane O.*, 90 Md.App. 406, 420 n. 5, 601 A.2d 149 (1992). In *Goldberger*, we explained that, when language in a statute is plain and unambiguous, it should be given effect in accordance with the plain meaning of the words and the legislative purpose in passing the enactment. 96 Md.App. at 325, 624 A.2d 1328. Accordingly, we defined "voluntarily impoverished," as used in the Guidelines, as "freely, or by an act of choice, to reduce oneself to poverty or deprive oneself of resources with the intention of avoiding support or spousal obligations." *John O.*, 90 Md.App. at 421, 601 A.2d 149 (footnote omitted). We have also determined that, "[a]lthough the parent can choose to live in poverty, that parent cannot obligate the child to go without the necessities of life," as long as that parent has the means or potential ability to provide for the child. *Goldberger*, 96 Md.App. at 326–27, 624 A.2d 1328.

In the case *sub judice*, appellee is incarcerated and has no reasonable means by which to support his child, with the exception of his meager income from his job at the MCTC. Applying some of the factors enunciated in *John O., supra,* to appellee's situation, we recognize (1) that appellee's incarceration precludes him from finding and retaining employment; (2) that appellee's past work history, his current physical condition, and his level of education are irrelevant at this point because he is not scheduled for release from the MCTC until 2001; and (3) that considering "the area in which [appellee now] live[s] and the status of the job market there," no doubt exists as to appellee's lack of control over his financial condition.

We note that, although appellee "has committed some culpable act which has rendered necessary the actions of another ... the elimination of the income [cannot] be termed 'voluntary' and therefore not affecting the child support obligation."

*Peters v. Peters,* 590 N.E.2d at 778. There is no evidence that appellee's incarceration involved a deliberate design to avoid payment of the child support obligation. We hold that "[w]here the action leading to the incarceration was *not* taken for the primary purpose of avoiding the support obligation, incarceration alone does not defeat a motion for modification." *In re Marriage of Willis,* 314 Or. 566, 840 P.2d 697, 699 (1992). In addition, we hold that, where the incarcerated parent has no assets and can do nothing about paying the child support obligation, the trial court should consider whether the particular facts of the case warrant a reduction in the child support amount. "Certainly, if the evidence reflects that the incarcerated parent has any assets, those assets should first be made available for the support of the child." *Ohler v. Ohler,* 369 N.W.2d at 619 (Krivosha, J., dissenting).

"A trial court's decision to modify a child support order [should] be upheld if the court rationally exercised its discretion." *Voecks v. Voecks,* 491 N.W.2d at 109. In the case *sub judice,* the trial court examined the evidence, applied sound legal standards, and reached a reasoned conclusion. This case, however, does not compel the modification of child support obligations resulting from imprisonment any more than it precludes such a result. *Voecks,* 491 N.W.2d at 109. Under different factual circumstances, a trial court could properly exercise its discretion and determine that a reduction in child support *would not be appropriate.* Here, however, it is undisputed that appellee has no assets and is not eligible for work release. Appellee's only income is $20 per month from his work at the prison's food center. Appellee's current support obligation is $50 per week. The trial court recognized that

> [t]wo general truisms oppose one another [in the case *sub judice* ]. On the one hand [appellee] has committed some crime, not related to his current domestic situation, and should not reap the benefit of his own wrongdoing. On the other hand, he has no way to pay, and any sums awarded do not reflect his actual income [of $20 per month].

The court then observed that, under Maryland law, "[i]f Jones had been incarcerated before the support order, he would not have been required to pay anything.... The support hearing, barring work release or adequate assets, [would have been] put off to another day." The court found the treatment of parents incarcerated prior to the issuance of a support order inconsistent with the treatment of those parents incarcerated subsequent to the issuance of a support order. The court noted that "if the support order starts one month before incarceration, [the child support obligation] continues however long the defendant is locked up." Because of this inconsistency, the court stated in its opinion and order that

the better reasoning is that an obligor who is incarcerated, for reasons not related to his family, has not voluntarily impoverished himself because he has no intent of losing his income to deny his family. We cannot find a distinction between the earlier examples of the already incarcerated obligor as opposed to the subsequently incarcerated obligor. Accordingly, we believe that the obligation should cease during incarceration, barring some source of income or assets.

The court then sustained appellee's exceptions and granted appellee's petition for stay of enforcement of child support obligations.

Although appellee's motion was for a stay of enforcement of his child support obligation, it is clear from the record that what he really sought (and what appellant and the trial judge understood he was requesting) was a cessation or suspension of the support obligation itself while he was incarcerated. And although the judge said that he was granting appellee's motion, he definitely ordered that appellee's child support obligation would cease during the period of appellee's incarceration. The arguments in the parties' briefs in this Court are based on a recognition that the trial judge, having found that appellee had not voluntarily impoverished himself, suspended appellee's child support obligation for the duration of his incarceration; it is not contended that the court merely

stayed enforcement of the obligation. Because the trial court applied proper legal standards to the facts and reached a reasoned conclusion, we shall affirm the court's decision granting appellee's motion to stay enforcement of child support obligation, which effectively suspends payment of child support, during his period of incarceration. We note, however, that, although we believe this holding conforms to the law in Maryland, the Legislature may wish to address this issue of whether child support should terminate for obligors who are incarcerated.

**JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.**